CITY OF WICHITA FALLS, Appellant,

v.

**Rufus RAMOS, Appellee.**

**No. 18200.**

Court of Civil Appeals of Texas, Fort Worth.

March 13, 1980.

Rehearing Denied April 10, 1980.

H. P. Hodge, Jr., City Atty., Wichita Falls, for appellant.

Schueller & Mason, and T. W. Schueller, Charles J. Mason, Jr., and Barry L. Macha, Wichita Falls, for appellee.

OPINION

SPURLOCK, Justice.

A city appeals a judgment against it for damages sustained by one of its citizens who stepped into an uncovered water meter box located within the right-of-way for a city street. The principal question on appeal is whether under the facts of this case, the city owed the injured citizen the duty to inspect the water meter to make sure it was covered.

We affirm.

Rufus Ramos is a resident of the City of Wichita Falls. At the time of his injury on August 2, 1976, Ramos was inspecting the property of Robert Thurman pursuant to giving Thurman an estimate of the cost of fencing it. It is undisputed that Thurman's land and the water meter box in question are within the corporate limits of Wichita Falls and that the water meter box is within the city's street easement. Ramos, Thurman, and a third man were walking along the boundary of Thurman's four acre lot which parallels Hilltop Street. Ramos stepped into the uncovered water meter box fracturing bones in his leg.

The meter box is about twelve feet from the edge of Hilltop Street. Hilltop is an asphalt street with gravel shoulders. It has no paved sidewalks or curbs. At the time of the incident the meter box was covered by grass and weeds which had grown up out of the box and around the box to a height of about three feet. The box is about 29 inches in diameter and about 2½ feet deep.

The trial court submitted this case to a jury upon special issues. By its answers the jury found that Ramos sustained an injury by stepping into the water meter box; that the city knew or by the exercise of reasonable care should have known of the uncovered meter box on its right-of-way; that the city was negligent in failing to inspect the meter box to determine if it was covered; and that this was a proximate cause of

the occurrence. The jury also found that Ramos was negligent in failing to keep a proper lookout and that this was also a proximate cause of the occurrence. The jury determined the comparative negligence of the parties was 90% for the city and 10% for Ramos. The trial court rendered a judgment for Ramos on the verdict and awarded damages accordingly.

■ The city contends that it did not owe Ramos the duty of inspecting the meter boxes to make sure they were covered. It claims at most its duty was that owed to a licensee. It is well settled that no duty to inspect is owed a licensee in a premises defect situation. We must determine what duty, if any, the city owed to Ramos under the facts and circumstances of this case.

Pertinent to this determination are several facts in addition to those already discussed. The Wichita County Water Control and Improvement District Number 5 constructed the meter box in question and installed a water meter. There is no evidence revealing exactly when this took place. However, late in 1959 or on January 1, 1960, the City of Wichita Falls took over the water district. The city took control of all of the district's assets and assumed all of its debts and obligations. In November, 1972, the city removed the meter from the meter box in question. (A new meter was installed in the box about three months after Ramos' injury.)

By its answers to Ramos' requests for admissions, the city admitted that its ordinances provide that through its director of public utilities it controls the water distribution system; that it has control over water meters and meter boxes connected with the water system; and that it is unlawful for anyone, except personnel authorized by the water department, to tamper with any meter or meter box. The city also admitted that on or about the date of Ramos' injury it did not inspect the meter box to determine whether it was covered.

A review of the record in this case reveals that the city had for a number of years a problem with straight line connections. A straight line connection is made when a customer improvises a pipe which either bypasses or replaces a water meter. Thus the user gets water which is not metered. Although the evidence reflects that only a very small percentage of the city's water loss is attributed to straight line connections, there is also evidence that the city has a policy that meter readers inspect the meter boxes without meters to detect these straight connections. If the reader saw there was no lid on the box, this would be reported and a lid would be installed to cover the meter box. While the evidence on the city's policy of inspection is conflicting, there is sufficient evidence to support the conclusion that the city had such a policy.

A water department crew leadman testified that he thought it was dangerous to leave meter boxes uncovered because someone could step in them. There is evidence that the meter box in question had been uncovered for some length of time because of evidence that "quite a bit" of sediment was found in the bottom of the meter box. As already noted, grass and weeds were growing up out of the bottom of the meter box to a height of about three feet. Further the city's utility superintendent testified that the meter box had not been inspected between the time the meter was removed in November, 1972 and the date of Ramos' injury in August, 1976.

■ Finally, it should be noted that the meter box in question is within the city's right-of-way for a street, which fact was stipulated by the city. It is well settled that cities generally have a duty to exercise ordinary care in maintaining streets and sidewalks in a reasonably safe condition. Municipalities have been held to have constructive notice of defects in the street and sidewalks if through the exercise of reasonable care and diligence, it would have discovered them. 40 Tex.Jur.2d, Rev., Part 1 *Municipal Corporations*, Sec. 692 (1976).

The city contends that it did not owe Ramos the duty owed a traveler using a public way. It claims that in walking along the boundary of the property to estimate

the cost of erecting a fence, Ramos was not a traveler and was not on a public way at the time of his injury. It further asserts that a city's duty of ordinary care does not extend to the entire width of its street easement. The city relies on the rural nature of the area in question and the fact there is little pedestrian traffic in the area.

Tex.Rev.Civ.Stat.Ann. art. 6701d, Sec. 13(a) (1977), defines a street as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Section 13(d) defines a sidewalk as "[t]hat portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians." We note the definition for sidewalk does not refer to whether it is paved or frequently used. The court in *Railroad Commission v. St. Louis S. W. Ry. Co. of Texas*, 35 Tex.Civ.App. 52, 80 S.W. 102 (1904) *writ den.*, 98 Tex. 67, 80 S.W. 1141 (1904), stated that the characterization of a way as public or private is determined by the extent of the *right* to use the way and not by the *extent* to which the right is actually exercised.

From all of the above we conclude that the city had exclusive control over the meter box, had made it illegal to tamper with the box, and had a policy of inspecting the meter boxes to prevent loss of water. Further, we conclude that the meter box was located along a public way, a sidewalk, which the public, including Ramos, had the right to use. There is evidence that the unsafe condition had existed over an extended period of time. We hold that the City had the duty to exercise ordinary care in maintaining the water system, and had the duty to exercise ordinary care to discover meter boxes in an unsafe condition. It is our opinion that the city owed these duties to Ramos, and that had the city exercised ordinary care, it would have discovered the unsafe condition.

Our conclusion is supported by the decision in *Gatz v. City of Kerrville*, 36 S.W.2d 277 (Tex.Civ.App.—San Antonio 1931, writ dism'd), which holds that when a city elected to place and maintain a water meter box in a much traveled sidewalk, it assumed the duty of using at least ordinary care to prevent injury to persons lawfully using the public way. Under the facts as outlined above we are convinced that the decision in *Gatz* should be extended to apply in this case.

Having decided the duty question in this case we now consider the City's points of error in detail. Most of the city's points attack the trial court's jury charge. Ramos contends that by failing to timely complain of the charge before it was read to the jury, the city waived any error therein and in fact acquiesced to the method of submission of the case. He claims the record reflects the city's objections to the court's charge were made and filed more than three months after the trial of the case. Our review of the record indicates that no objections to the charge were included in the statement of facts. However, written objections to the charge were included in the transcript. Indeed the file mark on the objections reveals that they were filed with the district clerk about three months after the trial. There is no indication of exactly when the objections were presented to the trial court. However, just above the signature of the trial judge appears the following:

> "The above and foregoing objections and exceptions to the Court's charge having been duly and *timely presented* are in all things overruled." (Emphasis ours.)

While it may be the better practice to affirmatively indicate that objections to the trial court's jury charge were made and overruled before the charge was read to the jury, we find that the above is sufficient to indicate that the objections in question were timely presented. Thus we conclude that the city did not waive its objections to the charge by filing them with the district clerk after the charge had been read to the jury.

The city's first and fourth points of error concern the issue of whether the city knew or should have known of the dangerous

condition of the meter box. The city, pursuant to its position that Ramos was at most a licensee, requested the trial court to submit an issue on whether the city had actual knowledge of the dangerous condition of the uncovered meter box. The trial court refused the request and submitted the following issue:

"Special Issue No. 2:

"Did the City know, or by the exercise of reasonable care should the City have known of the uncovered water meter box on its right-of-way on August 2, 1976?

" . . . "

■ The only objection the city made in the trial court concerning this issue was that the court's submission of special issue no. 2 was multifarious. On appeal the city complains that the trial court erred in refusing to submit its requested issue on actual notice and that special issue no. 2 is multifarious. Ramos contends that the city waived any error in the refusal to submit the city's requested issue because it failed to object. As a general rule objection to the court's charge is necessary to preserve any errors therein when (1) there is an alleged omission of a controlling issue necessary for the complete submission of the opposing party's theory of recovery; or (2) when the form or wording of an issue, definition, or instruction is allegedly erroneous. See 3 McDonald, Texas Civil Practice Sec. 12.27.1 & 2 (1970).

■ Under the facts of this case we conclude the city waived any error in the failure of the trial court to submit its requested issue on actual notice because it failed to properly preserve the error by timely objection. Here it appears the city's basis for complaint was that the issue as submitted was erroneous in form or wording, having failed to restrict the jury's finding to actual notice required if indeed Ramos had been a licensee. It is well settled that objections to the court's charge must be specific in alleging the grounds therefor. The city did not object on this ground. Further, we agree with Ramos that the city's request for submission of an issue cannot substitute for a proper objection in

this case. *Jon-T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Even had the point been properly preserved, it appears the issue the city requested is at most a shade of the ultimate issue submitted and therefor was properly refused.

■ The issue properly before us is whether special issue no. 2 is multifarious. The city claims issue no. 2 actually submitted two fact issues when Ramos could only recover if he proved actual notice. We find this contention without merit. Under the evidence the trial court properly submitted special issue no. 2. We thus overrule points of error one and four.

■ The city complains the trial court erred in failing to submit an issue and instruction requested by it concerning whether the meter box was located along a public way. We conclude that for the reasons stated above the city has waived any error in the failure of the trial court to submit the requested issue and instruction by failing to timely object. However, even had the point been properly preserved for review, it is well settled that the trial court need not submit an issue about which there is no dispute in the evidence. As noted above the city stipulated that the meter was along its street easement. We overrule points of error two and three.

All of the city's remaining points of error concern the duty question which has been previously discussed. Although it is not necessary to discuss in detail these remaining points, each point of error presented in complaint of the trial court's judgment has been severally considered and each is overruled.

The judgment of the trial court is affirmed.