Douglas Wayne MATTHEWS, Appellant,

v.

The STATE of Texas, State.

No. 2–03–149–CR.

Court of Appeals of Texas, Fort Worth.

April 28, 2005.

Richard Charles Kline, Fort Worth, TX, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Curtis Jenkins, Elizabeth Bourland and Theresa Austin, Assistant Criminal District Attorneys, Fort Worth, TX, for Appellee.

PANEL A: LIVINGSTON, DAUPHINOT, and McCOY, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellant Douglas Wayne Matthews appeals from a pretrial ruling denying his motion to suppress, after which he entered his plea of guilty pursuant to a plea bargain agreement to the charge of possessing four or more grams but less than two hundred grams of cocaine with the intent to deliver.  The trial court convicted him and sentenced him to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Because we hold that the trial court erred in denying Appellant's motion to suppress, we reverse the trial court's judgment and remand this case for a new trial.

### BACKGROUND FACTS

#### The Search and Arrest

The record before us reveals three searches—the search of a truck, the search of a gym bag located within the truck, and the search of a shaving kit inside the gym bag.

The police arrived with a warrant to search Appellant's cousin's house, includ-

ing all vehicles and detached buildings within the curtilage, and to arrest a man named "Doug." While executing the warrant, the police did not find anyone in the house. They did find people in the detached garage within the fence surrounding the lot on which the house was located. The police patted down all the people in the garage, laid them face down on the floor, and cuffed them. The police asked Appellant for his name and he said, "Doug." The police noticed that a green truck was parked on the curb and searched the truck. The truck was driven by Appellant but was owned by his mother. The police arrested Appellant for possession of crack cocaine they found in a shaving kit inside a gym bag inside the truck.

Appellant was indicted on two counts of possession of a controlled substance, namely cocaine, of four grams or more, but less than two hundred grams, with the intent to deliver. The indictment also contained a repeat offender notice. Appellant filed a motion to suppress the evidence, which the trial court denied. Appellant then agreed to a plea bargain, reserving the right to appeal the denial of the motion to suppress.

### The Warrant and Suppression Hearing

The warrant authorized the search of "all vehicles and detached buildings within the curtilage therein named." Sergeant Stanford testified for the State that there were several vehicles parked in the street and that Appellant's truck, also parked in the street, had one wheel in the driveway. He testified that Appellant admitted that it was his truck. When he asked Appellant his name, Appellant replied that it was Doug. Sergeant Stanford testified,

I knew that the search warrant listed a man by the name of Doug, that the descriptions given to me on the search warrant and by Officer Broadwater closely matched the Defendant. I then asked the Defendant if he would mind if I searched his truck. He said "Go ahead."

I asked him where the keys were. He said his right front pocket, so I reached into his right front pocket and removed the keys.

A different officer, Officer Blaydes, actually conducted the search of the truck. Behind the driver's seat, between the driver and passenger seats, he found a gym bag that contained a shaving kit. Inside the shaving kit, he located a rock of crack cocaine. Officer Blaydes said the truck was on the edge of the driveway and curb line, straddling the curb line and the end of the driveway. He could not say how many tires were actually on the driveway. Blaydes did know that there were several cars parked on and around the property and testified that there might have been another vehicle in the driveway.

Although Officer Blaydes testified that someone ran the plates of the truck to determine the registered owner, there was no evidence of the result of the record search. He did not know who provided the keys to the truck.

Appellant testified that his truck was parked on the street with no part of it in the driveway. Two cars were in the driveway. One had been there a couple of months at the time of the arrest, and State's exhibits 2 and 3, photographs taken at a later time, showed that it had three flat tires. The State and Appellant agreed that the truck Appellant drove belonged to his mother and that Appellant and his mother lived at the same address. His testimony that he drove the truck with his mother's permission was uncontroverted. Appellant testified that he did not give anyone consent to search the truck.

At the suppression hearing, the State argued,

> First of all, it's our contention that it was a consensual search; and secondly, the officers had probable cause to search this vehicle. It's in the search warrant, which has been admitted as State's Exhibit 1, that they listed all vehicles within the curtilage. And they had probable cause because they knew it was his car. They knew that this car was driven by a person who in the past had dealt drugs at this location. They know this because there's an undercover buy that they set up.

> It's parked half in the curtilage, little bit in the street. It was partially in the street, partially in the driveway. It's within the curtilage.

> In addition, the automobile exception, because of the mobility of vehicles and the destructibility of evidence, it is also our contention that this was a good search.

The State also argued in the trial court, as it does on appeal, that Appellant lacked standing to challenge the search because the truck was not Appellant's. That is, the State argued that the police search of the truck was lawful because the truck was Appellant's but that Appellant lacked standing to challenge the search because the truck was not his.

The trial court found that the accepted definition of curtilage was inappropriate in an urban setting and redefined curtilage to include the public street running beside the property described in the warrant. The court found that the vehicle parked in the street was parked within the curtilage of the house because it was parked on the street that touched the property discussed in the search warrant.

The trial court also found that the automobile could be searched pursuant to the automobile exception to the warrant re-

quirement. The court declined to find that Appellant voluntarily consented to the search. The court limited its ruling to a finding that the truck was searched within the scope of the warrant because the street was part of the curtilage and "lawful to be searched independent of the scope of the warrant based upon the information known to the officers and the circumstances . . . which is implied in the record." The trial judge also stated, "It's inferential in the record that other substances were found on the persons, the details of which are not in the record, so I wouldn't speculate by adding more fat to the fire of the issue of probable cause to search the vehicle at the scene." The trial court found the record insufficient to show Appellant was the person named in the warrant. The court also found the record insufficient to determine whether Appellant had standing and consequently assumed standing in hearing and denying Appellant's motion to suppress.

### LEGAL ANALYSIS

#### Standing

Before we reach the merits of Appellant's complaints, we must first address the issue of standing. The State argues on appeal, as it did in the trial court, that Appellant had no standing to challenge the search of the truck he was driving. Yet at the hearing on the motion to suppress, the State argued, "[I]t's our contention that it was a consensual search; and secondly, the officers had probable cause to search this vehicle. . . . [T]hey had probable cause because they knew it was his car."

The State adopts inconsistent positions. It argues on the one hand that Appellant had no standing to contest the search of the truck because it was not his truck and at the same time that Appellant exercised sufficient exclusive care, custody, and con-

trol of the truck to establish the nexus between the contents, including the contents of a shaving kit inside a gym bag inside the truck, and himself. While a party may take alternative positions, a party may not take inconsistent positions in a judicial proceeding.

We addressed the circumstances under which a party may be judicially estopped from taking inconsistent positions in judicial proceedings in *Goldman v. White Rose Distributing Company:* [1]

Judicial estoppel holds that a party who has made a sworn statement in a pleading, a deposition, oral testimony, or affidavits in a judicial proceeding is judicially estopped from maintaining a contrary position in a subsequent proceeding. The doctrine is based on public policy that prohibits a litigant from maintaining inconsistent positions in separate judicial proceedings. The purpose of the doctrine is "to uphold the sanctity of the oath and to prevent abuse of the judicial process."

. . . .

White Rose claims that the statements made by its attorney during the first trial cannot be considered in determining judicial estoppel because that doctrine only applies to statements made under oath. However, an attorney is an officer of the court and, as such, is "an instrument or agency to advance the ends of justice." An attorney may bind a party to a particular position. Indeed, courts routinely rely on counsel's statements during oral argument and rely on these representations when deciding cases.[2]

■ We hold that the State is judicially estopped from arguing that Appellant lacked standing to challenge the search of the vehicle that the State argued in the trial court belonged, in the legal sense, to Appellant. In an abundance of caution, we nevertheless address the issue of Appellant's standing to challenge the search of the vehicle.

■ Generally, the right to challenge the lawfulness of a search is limited to persons with "standing," that is, to those who have been aggrieved by a search and seizure.[3] When a search is contested, the accused establishes standing, or his right to complain of the search, by showing that he had a reasonable expectation of privacy in the area searched.[4] A mere allegation by an accused that he was a victim of an illegal search or seizure, if not disputed by the State, is sufficient to establish standing to challenge a search or seizure.[5] Once the State challenges the allegation, the accused carries the burden of proof.[6] The Court of Criminal Appeals recently explained in *Kothe v. State,*[7]

Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that

---

1. 936 S.W.2d 393 (Tex.App.-Fort Worth 1996), *vacated pursuant to settlement agreement,* 949 S.W.2d 707 (Tex.1997).

2. *Id.* at 397–98 (citations omitted).

3. *Goehring v. State,* 627 S.W.2d 159, 164 (Tex. Crim.App.1982).

4. *Chapa v. State,* 729 S.W.2d 723, 725–29 (Tex.Crim.App.1987).

5. *Russell v. State,* 717 S.W.2d 7, 9 n. 6 (Tex. Crim.App.1986).

6. *Id.*

7. 152 S.W.3d 54 (Tex.Crim.App.2004).

the government invaded.[8] He must prove that he was a "victim" of the unlawful search or seizure.[9] He has no standing to complain about the invasion of someone else's personal rights.[10] Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation.[11] Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo*.[12]

In this case, the State failed to challenge Mr. Kothe's standing to complain about the present search or seizure in the trial court. Mr. Kothe argues that the State cannot raise the issue on appeal in the context of a warrantless search when the State was the losing party in the trial court. We disagree. This Court has previously stated that, because standing is an element of a Fourth Amendment claim, the State may raise the issue of standing for the first time on appeal, even when the defendant is the prevailing party in the trial court.[13] The appellate court may raise the issue of standing on its own;[14] it may analyze that issue as a part of the Fourth Amendment claim presented;[15] or it may conclude that the State has forfeited that argument because it failed to raise it in the trial court.[16,17]

---

**8.** See *Rakas v. Illinois,* 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978) (noting that issue of standing involves two inquiries: first, whether defendant has alleged an "injury in fact"; and second, "whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties"). "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969).

**9.** See generally 5 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.3, at 118 (3d ed.1996).

**10.** *United States v. Salvucci,* 448 U.S. 83, 84–85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980); *Villarreal v. State,* 708 S.W.2d 845, 849–50 (Tex.Crim.App.1986).

**11.** See *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *United States v. Pierce,* 959 F.2d 1297, 1303 (5th Cir.1992); *United States v. Brazel,* 102 F.3d 1120, 1147 (11th Cir.), *cert. denied,* 522 U.S. 822 (1997). Because warrantless searches and seizures are presumed to be unreasonable, the prosecution must establish that any search or seizure was justified under an exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

**12.** *State v. Johnson,* 896 S.W.2d 277, 285 (Tex.App.-Houston [1st Dist.] 1995), *aff'd,* 939 S.W.2d 586 (Tex.Crim.App.1996); see *United States v. Phillips,* 382 F.3d 489, 494 (5th Cir. 2004) (noting that "[w]hether a defendant has standing to contest an allegedly illegal search is a question of law" and is reviewed *de novo* ); *United States v. DeLuca,* 269 F.3d 1128, 1131 (10th Cir.2001) (stating that courts review *de novo* the issue of whether a defendant has standing to challenge a search).

**13.** *State v. Klima,* 934 S.W.2d 109, 110–11 (Tex.Crim.App.1996).

**14.** See *State v. Brady,* 763 S.W.2d 38, 42 (Tex. App.-Corpus Christi 1988, no pet.) (addressing issue of defendant's standing to challenge search although not raised by either State or defendant in trial or appellate court).

**15.** See *Klima,* 934 S.W.2d at 110–11.

**16.** See, *e.g., United States v. Price,* 54 F.3d 342, 346 (7th Cir.1995) (stating that "[b]ecause *Rakas'* principle of 'standing' is rooted in the substantive law of the Fourth Amendment and not Article III [jurisdiction of courts], the government may waive these types of standing objections") (citation omitted); *see also United States v. DeGasso,* 369 F.3d 1139, 1143 n. 3 (10th Cir.2004) (concluding that standing issue was waived because government had never raised it).

**17.** *Kothe,* 152 S.W.3d at 59–60 (footnotes in original).

The owner of a vehicle has standing to contest the search because the owner has an expectation of privacy.[18] A defendant also has standing to challenge the search of a car he does not own if he shows that he gained possession of the car from the owner with the owner's consent or from someone authorized to give permission to drive it.[19]

In the case before us, the trial court found that Appellant was driving his mother's car, that they lived at the same address, and that the car was usually driven by Appellant and his wife. Appellant testified without contradiction that the vehicle was never driven by his mother. This evidence is uncontroverted, and there is no evidence that the truck was stolen. Deferring to the trial court's determination of facts, and reviewing the determinations of law de novo, we hold that Appellant has satisfied his burden to show standing to contest the search of the truck.

### The Validity of the Search Pursuant to the Search Warrant

Appellant does not challenge the validity of the warrant. Instead, in his first point, he argues that the search exceeded the scope of the warrant. The warrant commanded peace officers to search

the premise, to include all vehicles and detached buildings within the curtilage therein named and described at 3521 Ave D ... and ... arrest ... a black male described as follows: approximately 40 years of age, 6'-04" and 270 lbs., short black hair, thin beard, and uses the name "Doug", and others accused of concealing said controlled substance, namely "crack" cocaine.

The question here is whether Appellant's vehicle was located within the curtilage of 3521 Ave. D when the police entered it. The answer is no.

Curtilage is "the land immediately surrounding and associated with the home" and "warrants the [same] Fourth Amendment protections that attach to the home."[20] The U.S. Supreme Court has recognized that the Fourth Amendment protects the curtilage of a house and identified curtilage as "the area [that] harbors the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'"[21] "Whenever government agents enter into the curtilage, they necessarily intrude upon the individual's reasonable expectation of privacy."[22]

Whether a particular area is included within the curtilage of a home is determined by whether the defendant had a reasonable expectation of privacy in the

---

18. See *Villarreal*, 935 S.W.2d at 138.

19. *State v. Crisp*, 74 S.W.3d 474, 480–81 (Tex. App.-Waco 2002, no pet.); *Rovnak v. State*, 990 S.W.2d 863, 867 (Tex.App.-Texarkana 1999, pet. ref'd); *Stine v. State*, 787 S.W.2d 82, 85 (Tex.App.-Waco 1990, pet. ref'd) (holding defendant who had authority to test drive vehicles left for repairs at car repair shop had standing to challenge search of car which he had used to commit murder).

20. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984); *accord Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Crim.App.1979).

21. *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987) (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)).

22. *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim.App.) (quoting *Kann v. State*, 694 S.W.2d 156, 160 (Tex.App.-Dallas 1985, pet. ref'd)), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991).

area.[23] Factors considered are the proximity of the area to the home, whether the area is included within an enclosure surrounding the home, the nature of the use to which the area is put, and the steps taken to protect the area from observation by passersby.[24] A public place is not within the curtilage of a home.[25] In the Texas Penal Code, a "public place" is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."[26]

In the case now before this court, Appellant's truck was parked on the curb in the public street. The trial court found as a fact that a small percentage of the vehicle was on the "actual property of the premises." Only Officer Stanford testified that any portion of the truck was in the driveway. He testified that one wheel was in the driveway. The trial court also concluded as a matter of law that

the street, public street, touching the property of a vehicle parked at the premises is part of the curtilage stretching beyond the common law definition of curtilage, which included the farm and the premises and property and fence; that under an urban setting, the lawful parking area of the curb in front of a residence is within lawful curtilage for purposes of a reasonable scope of a search warrant under the Fourth Amendment to the United States Constitution, as well as the Texas Constitution, and that that would be curtilage, the same as the hitching post outside, adjacent to the fence of the old homestead would be part of the curtilage if it adjoins the property. Even though it is public land, it's the curtilage of the property. And being public property and land, there's no reasonable expectation of privacy on what could be seen on a vehicle on a public street, and I find that's the curtilage of the property that is immediately adjacent to that part of the street, if it's lawful parking.

23. *Id.* at 896.

24. *Dunn*, 480 U.S. at 301, 107 S.Ct. at 1139.

25. *Evans v. State*, 995 S.W.2d 284, 285–86 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd).

26. Tex. Penal Code Ann. § 1.07(a)(40) (Vernon Supp.2004–05).

As the trial court pointed out, the street is a public place.[27] As a public place, it is by definition not part of "the area [that] harbors the intimate activity associated with the 'sanctity of a man's home and the privacies of life.' "[28]

Examining the photograph of the street beside the property in question, we note that a fence separates the backyard from the public sidewalk and stretches from the house to the detached garage. Between the fence and the street are a sidewalk, grass, and a curb.

A sidewalk is defined as that portion of a street that is between a curb or lateral line of a roadway and the adjacent property line and is intended for pedestrian use.[29] Sidewalks in a city are a part of the street and subject primarily to the control of the city rather than the abutting property owners.[30] For purposes of public intoxication, a street and any adjoining sidewalk are clearly public places.[31]

The driveway in the photograph crosses the sidewalk and joins the street at the curb. Even if, as Stanford testified, a wheel of Appellant's truck was in the

27. *Id.*

28. *Dunn,* 480 U.S. at 300, 107 S.Ct. at 1139.

29. TEX. TRANSP. CODE ANN. § 541.302(16) (Vernon 1999); *City of El Paso v. Chacon,* 148 S.W.3d 417, 423 (Tex.App.-El Paso 2004, pet. denied); *City of Wichita Falls v. Ramos,* 596 S.W.2d 654, 657 (Tex.Civ.App.-Fort Worth 1980, writ ref'd n.r.e.).

30. *Hixon v. State,* 523 S.W.2d 711, 713 (Tex. Crim.App.1975); *Grapotte v. Adams,* 130 Tex.

587, 111 S.W.2d 690, 691 (1938); *Parra v. F.W. Woolworth Co., Inc.,* 545 S.W.2d 596, 598 (Tex.Civ.App.-El Paso 1977, no writ); *Richardson v. Walsh,* 292 S.W.2d 855, 856 (Tex.Civ.App.-San Antonio 1956, no writ).

31. *Loera v. State,* 14 S.W.3d 464, 468 (Tex. App.-Dallas 2000, no pet.); *King v. State,* 732 S.W.2d 796, 803 (Tex.App.-Fort Worth 1987, pet. ref'd).

driveway, the truck was nevertheless in a public place and not within the curtilage because the wheel could not have extended beyond the portion of the driveway touching the curb and sidewalk. The trial court erred in finding that the public sidewalk, curb, and street were within the curtilage of the home in question. Because the warrant authorized the search of vehicles within the curtilage of the home only, and because the truck was not located within the curtilage of the home, the search of Appellant's truck exceeded the scope of the warrant. We sustain Appellant's first point.

### The Automobile Exception

In his second point, Appellant contends that the trial court erred in denying his motion to suppress on the basis of the automobile exception. We agree. When a warrant is determined to be invalid, we review the search to determine if it can be upheld under an exception to the warrant requirement.[32] We do likewise when a search exceeds the scope of the warrant, as is the case here.[33] The State bears the burden to show that the search falls within one of the narrow exceptions to the warrant requirement for the search to be constitutionally permissible.[34] Applicable in this case is the automobile exception, which permits officers to conduct a warrantless search of an automobile so long as there is probable cause to believe that a crime has been committed and that there is contraband located in the vehicle.[35]

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."[36] Probable cause is still required to justify the search of an automobile, even if a warrant is not. "[T]he presence of an automobile on suspected premises, without more, does not give rise to search that automobile."[37] Probable cause exists where officers have reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed.[38]

In the case now before this court, the record reflects, and the trial court recognized, that there is no evidence that Appellant was the person named in the warrant and no evidence that any contraband was found on any person or on the premises named in the warrant as a result of the execution of the warrant or otherwise. The trial court found that, even though the record did not show probable cause to search the truck, the search of Appellant's truck was lawful "independent of the scope of the warrant based upon the information known to the officers and the circumstances . . . which is implied in the record." The trial judge also stated, "It's inferential in the record that other substances were found on the persons, the

32. *Adkins v. State*, 717 S.W.2d 363, 365–66 (Tex.Crim.App.1986).

33. *See Snider v. State*, 681 S.W.2d 60, 62–63 (Tex.Crim.App.1984); *see also United States v. Watkins*, 179 F.3d 489, 494–95, 499 (6th Cir. 1999).

34. *United States v. Robinson*, 414 U.S. 218, 243, 94 S.Ct. 467, 480, 38 L.Ed.2d 427 (1973); *Russell*, 717 S.W.2d at 9–10.

35. *Chambers v. Maroney*, 399 U.S. 42, 48–49, 90 S.Ct. 1975, 1979–80, 26 L.Ed.2d 419 (1970); *Amos v. State*, 819 S.W.2d 156, 160–61 (Tex.Crim.App.), *cert. denied*, 504 U.S. 917, 112 S.Ct. 1959, 118 L.Ed.2d 561 (1992).

36. *Coolidge*, 403 U.S. at 461, 91 S.Ct. at 2035.

37. *State v. Barnett*, 788 S.W.2d 572, 575 (Tex. Crim.App.1990).

38. *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim.App.), *cert. denied*, 540 U.S. 1004, 124 S.Ct. 536, 157 L.Ed.2d 410 (2003).

details of which are not in the record, so I won't speculate by adding more fat to the fire on the issue of probable cause to search the vehicle at the scene."

That is, the trial court concluded the search was lawful independent of the scope of the warrant because, although not included in the record, the court could infer information known to the officers and that drugs were found on other persons at the scene. The trial court misstated and misapplied the law. The State bears the burden of justifying a search.[39] In this case, the burden is more onerous because the State must justify a warrantless search. The justification for the search must appear in the record.[40] We are not allowed to supplement an insufficient record by inferring information necessary to the State's sustaining its burden. Because the State failed to sustain its burden of showing probable cause to justify the warrantless search, the search of Appellant's truck is not justified under the automobile exception. We sustain Appellant's second point.

### Consent

We must uphold a trial court's ruling on a motion to suppress if it is reasonably supported by the record and is correct under any theory of law applicable to the case.[41] Even though the State does not raise the consent exception on appeal, because it was raised below, we address it here.

The Texas and U.S. Constitutions both guarantee the right to be secure from unreasonable searches and seizures made without probable cause.[42] Under the Fourth and Fourteenth Amendments, "a search conducted without a warrant issued upon probable cause is 'per se unreasonable ... subject only to ... specifically established and well-delineated exceptions.'"[43] A search conducted with the consent of the suspect is one such exception, so long as the consent is voluntary.[44] The validity of a consent to search is a question of fact to be determined from all the circumstances.[45] The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence; the Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid.[46] At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony.[47] In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to a trial court's determination of historical

---

**39.** *Robinson*, 414 U.S. at 243, 94 S.Ct. at 480; *Russell*, 717 S.W.2d at 9–10.

**40.** *See O'Hara v. State*, 27 S.W.3d 548, 551 (Tex.Crim.App.2000).

**41.** *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim.App.2002); *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex.Crim.App.1990).

**42.** U.S. Const. amend. IV; Tex. Const. art. I, § 9.

**43.** *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576

(1967)); *Rayford v. State*, 125 S.W.3d 521, 528 (Tex.Crim.App.2003), *cert. denied*, —— U.S. ——, 125 S.Ct. 39, 160 L.Ed.2d 35 (2004).

**44.** *Schneckloth*, 412 U.S. at 219, 248–49, 93 S.Ct. at 2059.

**45.** *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim. App.), *cert. denied*, 537 U.S. 1051, 123 S.Ct. 603, 154 L.Ed.2d 527 (2002).

**46.** *Maxwell*, 73 S.W.3d at 281.

**47.** *Id.*

facts, and we review de novo the court's application of the law.[48]

■ In the case now before this court, the trial judge considered the witnesses and their testimony and announced that he was not convinced that Appellant voluntarily consented to the search of his truck. He found that the State failed to sustain its burden of showing free and voluntary consent to search. Applying the appropriate standard of review,[49] we will not disturb the trial court's determination.

## CONCLUSION

Having held that the search of Appellant's truck exceeded the scope of the warrant and is not justified by either the automobile or consent exception to the warrant requirement, we hold that the trial court abused its discretion in overruling Appellant's motion to suppress the fruits of the search of his truck. We reverse the trial court's judgment and remand this cause to the trial court for trial without the illegally seized evidence.

LIVINGSTON, J. filed a dissenting opinion.

TERRIE LIVINGSTON, Justice, dissenting.

I respectfully dissent from the majority's opinion in several respects. First, as to the question of appellant's standing, the majority points to inconsistent positions the State has taken regarding standing. However, it is really appellant who has taken inconsistent positions on standing.

When appellant testified at the suppression hearing, he denied giving officers consent to search and said that if he had been asked for consent to search he would have told them to ask his mother because it was not his truck. "Because it wasn't my vehicle. . . . I can't consent [sic] something that's not mine. . . . I don't have possession of the truck." Therefore, while I agree with the majority's position that the appellant had standing to contest to the search because the trial court found he had permission to drive the truck, I cannot agree that the State was the only party that took inconsistent positions.

In appellant's first point he challenges the validity of the search pursuant to the search warrant claiming that the vehicle was not located within the scope of the warrant. The majority goes to great lengths to conclude that the trial court erroneously determined that the vehicle was "within the curtilage of the home," the language used in the description for location for vehicles in the search warrant. While I agree with the majority that a street is a public place, I do not agree that a sidewalk, on this record, is. Further, whether the sidewalk is within the curtilage of the premises to be searched is irrelevant. The vehicle was located partially in the driveway of the premises and partially in the adjacent public street. Therefore, the only question to be addressed by the trial court and now by us was whether a vehicle that is partially parked on a street and partially parked in a driveway is within the "premises" of the subject house as described.

The trial court specifically found, as a matter of fact, that the truck was partially located in the driveway of the subject premises and therefore actually within the "premises to be searched." The trial court found

> based upon a part of the vehicle actually extending onto the property, the amount of the vehicle in the Court's mind

48. *Id.; Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

49. *Maxwell,* 73 S.W.3d at 281; *Guzman,* 955 S.W.2d at 89.

doesn't matter, but the Court finds that a small percentage of the vehicle was placed on—was on the actual property of the premises, therefore justifying a search of the remainder of the vehicle that extended onto the public street parking area.

So even if it's not curtilage, the vehicle is still partially on the premises as premises is defined, versus curtilage of the property.

The search warrant authorized a search of the "premise, to include all vehicles and detached buildings within the curtilage therein named and described [as] 3521 Ave D." Two officers testified the truck was partially in the driveway, which is actually on the premises and which is within the warrant. Therefore, we do not need to reach the question of whether the vehicle was located within the curtilage because the trial court found, as a matter of fact, that the truck was located in the driveway. This finding is supported by the testimony of the two officers. From this factual finding flows the inescapable legal conclusion that the vehicle was located on the premises.

Therefore, I would conclude that the search warrant itself authorized the search of the vehicle because it was located on the premises described within the search warrant. Because I would uphold the search of the vehicle on this basis, I believe the discussion regarding the automobile exception and consent is unnecessary. For all these reasons, I would affirm the judgment of the trial court.