John EMILIANO, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–411–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 1, 1992.

Rehearing Overruled Oct. 29, 1992.

Stephen Cihal, Victoria, for appellant.

George J. Filley, III, Dist. Atty., Loretta Owen, Asst. Dist. Atty., Victoria, for appellee.

Before FEDERICO G. HINOJOSA, Jr., KENNEDY and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury convicted appellant, who was certified to stand trial as an adult, for murder and assessed punishment at life in prison and a $10,000.00 fine. By three points of error, appellant complains that the trial court erred in allowing a witness to testify after that witness heard the testimony of another witness and in admitting evidence illegally seized. Appellant also challenges the sufficiency of the evidence. We affirm the trial court's judgment.

John Emiliano and Jimmy Tejeda went into a Circle K convenience store in Victoria, Texas, shortly after midnight on February 3, 1990. Emiliano grabbed the store clerk around the neck and told her to put the money from the cash register into a bag. At the same time, Tejeda broke the rod across the beer refrigerator door, opened the door, and removed two six-packs of Budweiser beer. Tejeda then grabbed some Marlboro cigarette packs, while Emiliano took the money bag and shot the clerk in the head with a .38 caliber revolver, killing her. As Emiliano and Tejeda ran down the alley away from the store, the money bag broke, and change fell in the alley. They then ran into an abandoned house "to see what was going to go on at the store."

After they left the house, Emiliano and Tejeda proceeded to Eddie Garcia's house, where they met, among others, Mark Perez. Emiliano told Perez that he had robbed the Circle K store and shot the clerk. After sunrise, Emiliano and Perez went to the house of Anthony Soto, Perez's older half-brother, to whom Emiliano also admitted robbing the Circle K store and killing the clerk. Two days later, Emiliano met Soto, and the two hid the gun outside of town.

On February 7, 1990, Victoria police officers went to Emiliano's home to search for evidence. They found a cartridge matching the type used in the killing. A grand jury began investigating the murder, and

Soto and Perez both implicated Emiliano, who was taken into custody on April 3, 1990. Soto took officers to the place where he and Emiliano had hidden the gun, and the officers recovered it.

While Emiliano was in jail, he met Derrick Buckner, who was charged with forgery. On June 11, 1990, Emiliano told Buckner that he had shot a woman while robbing a Circle K store.

By his third point of error, appellant complains that the trial court erred by admitting into evidence the cartridge seized at his home. He argues that the officers were denied consent to search and their action falls under no exception to the warrant requirement. The State contends that the search was consensual and that the cartridge was in plain view.

■ The State may seize items in "plain view" if the initial intrusion is proper, so the police have the right to be where they are, and the item is immediately apparent to the police to be evidence. *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990). What a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

■ The Fourth Amendment protects the curtilage of a house, and the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. *United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984)). In examining the "extent-of-curtilage" question, we examine the proximity of the intruded area to the home, the nature of uses to which the area is put, whether the area is within the home's enclosure, and the steps the resident took to protect the area from observation of passers-by. *Id.* 480 U.S. at 301, 107 S.Ct. at 1139–40.

The Court of Criminal Appeals has held that a person's Fourth Amendment rights are not violated when a law enforcement officer discovers evidence in plain view after intruding upon the curtilage if the officer approached the premises by the indicated usual route and did not deviate from the public pathway. *Bower v. State*, 769 S.W.2d 887, 897 (Tex.Crim.App.1989), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). In *Bower*, this right to approach validated the act of a police officer entering the driveway and looking through a window into the garage. *Id.* at 897–98.

■ In the present case, Officer Vanslooten and Detective Allen went to Emiliano's house. Upon arriving at the house, Detective Allen asked a thirteen-year-old boy for permission to search the residence. The boy refused to give the officers permission to search. Detective Allen then walked around the back of the house, and Officer Vanslooten walked into the driveway and looked into an open garage. The garage was separate from the house and stood a few feet to the side of the house. The front of the garage was farther from the street than was the house's back wall. Vanslooten saw the cartridge on a shelf in the garage. Vanslooten called Allen over to the garage, and Allen saw the cartridge, determined it was evidence, and entered the garage to seize it.

We find the officers violated appellant's protected Fourth Amendment privacy interests by intruding upon the curtilage to enter the position from which they could view the cartridge. While this house and garage were not surrounded by an enclosure, the garage was farther removed from the street than was the house and was only a few feet from the back of the house. Unlike the officers in *Bower*, Officers Allen and Vanslooten were expressly denied permission to search the house and deviated from the public pathway to approach the garage. A normal approach to appellant's front door would not include driving to a point behind the house from which the contents of the garage would be visible. We cannot construe the officers' actions as normal approach or retreat from appellant's residence.

■ Thus, we find the trial court erred by denying appellant's motion to suppress the cartridge. We now must determine whether that error was harmless. TEX. R.APP.P. 81(b)(2). To determine whether the error was harmless, we focus on the integrity of the process leading to the conviction rather than on the propriety of the outcome of the trial. *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We examine the error's source and nature, whether the State emphasized it, its collateral implications, how much weight a juror probably would have placed upon it, and whether a finding of harmlessness will encourage the State to repeat the error with impunity. *Id.* Briefly stated, the question we must answer is whether the error might possibly have prejudiced the jurors' process of deciding the case. *Id.* at 587–88.

■ The nature and source of the error are the trial court's failure to suppress evidence obtained in violation of appellant's Fourth Amendment protections. The Supreme Court holds such a violation in such serious light that it mandates exclusion of the evidence. *Mapp v. Ohio*, 367 U.S. 643, 648, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081 (1961). The Texas Legislature also mandates its exclusion. TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon Supp.1992). The judiciary excludes the evidence to deter government agents from violating Fourth Amendment protections. *United States v. Janis*, 428 U.S. 433, 458 n. 35, 96 S.Ct. 3021, 3034 n. 35, 49 L.Ed.2d 1046 (1976). Somewhat paradoxically, error in admitting evidence obtained in violation of the defendant's Fourth Amendment protections is subject to the harmless error rule. *Franks v. Delaware*, 438 U.S. 154, 162, 98 S.Ct. 2674, 2679, 57 L.Ed.2d 667 (1978); *Chambers v. Maroney*, 399 U.S. 42, 52–53, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970); *Castillo v. State*, 810 S.W.2d 180, 189 (Tex. Crim.App.1990).

If harmless error analysis required a reviewing court only to decide whether declaring the error harmless would encourage the State to repeat the error with impu-

nity, then applying the harmless error rule would squarely conflict with the purpose of the exclusionary rule. We must, therefore, examine the total evidence, the argument of counsel, the extent to which the error affected counsel's ability to raise defensive issues, and the extent to which the error affected the jury's resolution of the issues counsel did raise before we can assess whether declaring the error harmless would encourage the State to repeat it with impunity.

The record reflects that appellant's counsel, in closing argument, focused on the inconsistencies in the testimony of the State's witnesses and their motives for testifying. Appellant's counsel argued that Tejeda "made his deal" with the State and asked why witnesses were reluctant to talk about the involvement of Perez, who was not charged in the case. Defense counsel also questioned Soto's motives and veracity, particularly regarding his testimony that he and appellant hid the gun. Finally, he conceded that appellant had the gun the night of the murder and that Tejeda and Perez were accomplices. Defense counsel only challenged the State's assertion that appellant shot the store clerk.

The State argued that the jury need only find evidence which tended to connect appellant to the offense in order to find him guilty based on the testimony of accomplices Tejeda and Perez, should the jury find that Tejeda and Perez were accomplices. The State included the cartridge found in appellant's garage as evidence tending to corroborate the accomplice testimony, but the State also argued that the same type cartridges were found at a vacant house in which appellant and his accomplices temporarily stayed after the offense. The State's reference to the cartridge found in the Emiliano garage comprises only 16 lines of 20 pages of the State's final argument. The testimony used to admit the cartridge into evidence was only 22 pages of 1325 pages in the statement of facts.

We find that the jury was not prejudiced from deciding the case. The jury could and did find that Tejeda and Perez were appel-lant's accomplices and that their testimony was corroborated by sufficient evidence tending to connect appellant to the crime. While defense counsel did question the motives of the State's witnesses, and while the cartridge may have damaged the defense theory, defense made no effort to explain the testimony of Buckner, who testified that on June 11, 1990, Emiliano told him that he had shot a woman while robbing a Circle K store. In final argument, defense counsel stated, "And that leaves Mr. Buckner, I guess. You can consider his testimony for what it's worth." Defense counsel conceded possession of the weapon and the fact of the robbery, so we fail to see how appellant was harmed by the admission of a cartridge that fit the weapon he carried. We conclude beyond a reasonable doubt that the error made no contribution to the conviction or punishment. We overrule appellant's third point of error.

By his second point of error, appellant complains that the trial court erred in allowing Derrick Buckner to testify since he was present during Jimmy Tejeda's testimony. Appellant argues that Buckner testified concerning contested issues and that the State intended that Buckner corroborate Tejeda's testimony.

■ Enforcing the Rule is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion or injury to the defendant. *Beets v. State,* 767 S.W.2d 711, 747 (Tex.Crim.App.1987), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989). To establish injury, a defendant must show that the witness actually conferred with or heard the testimony of another witness and that the witness's testimony corroborated the testimony of the witness with whom he conferred or whose testimony he heard. *Webb v. State,* 766 S.W.2d 236, 240 (Tex. Crim.App.1989); *Moscatelli v. State,* 822 S.W.2d 693, 695–96 (Tex.App.—Corpus Christi 1991, no pet.).

■ The trial court conducted a hearing outside the presence of the jury to determine what Buckner heard. Buckner heard only that part of Tejeda's testimony which occurred after a lunch break and which

related to the activities of Emiliano and Tejeda subsequent to the robbery and murder. Buckner testified only concerning what Emiliano told him in jail about the robbery and murder, not concerning anything Emiliano may have said about subsequent events. Buckner did not corroborate the part of Tejeda's testimony that he heard. Appellant has not demonstrated injury from the breach of the Rule or that the trial court abused its discretion. We overrule appellant's second point of error.

By his first point of error, appellant challenges the sufficiency of the evidence. He argues that a conviction based on accomplice testimony cannot stand unless the accomplice's testimony is corroborated.

 In order to determine the sufficiency of the corroboration, we eliminate the accomplice testimony from consideration and then determine if there is other incriminating evidence tending to connect the defendant with the crime. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App.1988); *Alvarado v. State,* 816 S.W.2d 792, 796 (Tex. App.—Corpus Christi 1991, pet. pending). We look at the cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense. *Reed,* 744 S.W.2d at 126.

Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime and furnish sufficient corroboration to support a conviction. *Brown v. State,* 672 S.W.2d 487, 489 (Tex.Crim.App.1984). Possession of the fruits of a crime may be sufficient to corroborate accomplice testimony. *Lyman v. State,* 540 S.W.2d 711, 714 (Tex.Crim. App.1976). The presence of the accused in the company of the accomplice near the time of the offense may also be considered. *Brown,* 672 S.W.2d at 489.

Three witnesses, Mark Perez, Anthony Soto, and Derrick Buckner, testified that Emiliano admitted robbing the Circle K store and killing the clerk. Soto testified that he helped Emiliano hide the weapon,

that he showed officers where the weapon was hidden, and that the weapon produced in court was the weapon Emiliano brought him to hide. Another witness identified Emiliano as the person she saw retreat into the alley beside the Circle K store after midnight, while the victim was still alive. An investigating officer found Budweiser beer cans and Marlboro cigarette packs and $9.76 in change in the alley. Another witness testified that he saw Emiliano with a Budweiser beer can and Marlboro cigarettes shortly after the robbery. The State produced evidence that the victim was shot with .38 caliber semi-wadcutter bullets, the type fired by the weapon Emiliano hid. The evidence is sufficient to corroborate Tejeda's testimony that Emiliano murdered the Circle K store clerk. Appellant's first point of error is overruled.

We affirm the trial court's judgment.