NUMBER 13-03-168-CR
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
MICHAEL GARCIA,                                                                      Appellant,
v.
THE STATE OF TEXAS,                                                                Appellee.



On appeal from the 117th District Court
of Nueces County, Texas.




M E M O R A N D U M O P I N I O N

Before Chief Justice Valdez and Justices Hinojosa and Castillo

Opinion by Chief Justice Valdez
          Appellant, Michael Garcia, was charged with possession of less than one gram
of cocaine, a state jail felony. On January 30, 2003, the trial court held a pretrial
hearing on appellant’s motion to suppress illegally-seized evidence and subsequently
denied the motion. Pursuant to a plea agreement, appellant pled guilty, reserving his
right to appeal from trial court rulings on pretrial motions. The trial court found
appellant guilty and sentenced appellant to ninety days in an alternative incarceration
program and assessed a $500 fine and $140 laboratory fee. On appeal,


 appellant
contends that the trial court erred in denying his motion to suppress. We agree,
reverse the judgment of the trial court, and remand the case for further proceedings.
I. FACTS
         At the hearing on the motion to suppress, Senior Officer Hollis Bowers of the
Corpus Christi Police Department testified he was on duty on October 6, 2001. At
about 11:17 p.m., he received a call about a “suspicious subject with a gun standing
next to a red jeep” at 1334 Daytona. Bowers knew nothing about the source of the
information, including anything about the credibility or the veracity of the source. The
anonymous tip did not include a description of the man with the gun. 
         When Bowers arrived at the address, he saw a red Jeep headed in the opposite
direction. Bowers turned his car around to follow the Jeep. When the Jeep began to
move faster, Bowers activated his lights. Bowers wanted to stop the Jeep to ask the
driver questions but had not observed any traffic violations.
         The Jeep sped away faster, turned a corner, and drove behind a house at 3037
Staples, appellant’s home.


 Bowers stopped his car in front of the house on the
driveway and walked to the back of the house and into the yard. Appellant was not
in the car when Bowers first came around the back of the house. Appellant then ran
from the back door of the house toward the car. Bowers yelled at appellant to stop. 
Appellant said nothing was wrong and ran back into the house. Another officer arrived
at the home. Bowers then walked to the driver’s door of the Jeep and looked inside
the car. The dome light in the car was on. The other officer, who was looking into
the Jeep from the passenger side, found the drugs.
           Bowers admitted he never saw a man with a gun. Bowers also stated he
never went to the front door of the house and knocked, nor did he obtain permission
from anyone at the home to enter the backyard. Bowers testified that he had no
evidence that a crime had been committed when he arrived at the house. At the time
he entered the backyard, the only information corroborating the anonymous tip was
that a red Jeep was driving away from the address provided in the anonymous tip. 
         Officer Bernie Moss of the Corpus Christi Police Department testified he received
the same call Bowers did about a suspicious person with a gun standing next to a red
Jeep. Moss had no information about the source of the tip. When Moss arrived at the
address provided in the call, he saw Bowers turn his car around, follow a red Jeep, and
activate his lights. Moss then turned his car around, followed Bowers, and activated
his own lights. By the time Moss turned his car around, the Jeep and Bowers had
turned onto Staples. 
         When Moss turned on Staples, he saw Bowers pull into a residence. When
Moss got out of his car, he heard yelling toward the back of the house and ran in that
direction. Moss then searched by the back door of the home and underneath the home
for a gun. He looked inside the passenger’s side of the Jeep with his flashlight and
saw a small bag containing a white powdery substance. Moss opened the car door,
collected the bag, and tagged it.


 
         Moss admitted that, when he passed the address provided in the tip, he never
saw a person with a gun, a crime committed, or any signs of criminal activity. He saw
no corroboration at all that a crime was committed at 1334 Daytona. When Moss
arrived at the house, he still had no evidence a crime had been committed. Like
Bowers, Moss did not go to the front door of appellant’s home or obtain consent to
enter the backyard of appellant’s home.
II. MOTION TO SUPPRESS
         In his sole issue, appellant contends the trial court erred in denying his motion
to suppress.


 According to appellant, the officers conducted an unlawful search under
the Fourth Amendment of the United States Constitution.



A. Standard of Review
         The standard of review we apply to a ruling on a motion to suppress is well-settled. See Guzman v. State, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)
(discussing standard of review for rulings on motions to suppress). We shall not recite
the entire standard of review here. See Tex. R. App. P. 47.4. Because the issues in
this case do not turn on the evaluation of credibility and demeanor, we review the trial
court's ruling de novo. See Guzman, 955 S.W.2d at 89.
B. Unlawful Search
         The Fourth Amendment of the United States Constitution prohibits unreasonable
searches and seizures. U.S. Const. amend. IV; Maryland v. Buie, 494 U.S. 325, 331
(1990). A warrantless search is per se unreasonable unless the State can show that
the search falls within one of the established exceptions. Robbins v. California, 453
U.S. 420, 423 (1981).
         At trial, the State stipulated the officers had no warrant but contended the
drugs were in Moss’s “plain view” on the front seat of the Jeep.


 Although the “plain
view” doctrine is a well-established exception to the general rule that warrantless
searches are per se unreasonable, police officers may seize items in “plain view” only
where: (1) the officers have the right to be where they are at the time the item is seen;
(2) the officers discover the incriminating evidence inadvertently; and (3) it must be
immediately apparent to the officers that the items they observe may be evidence of
a crime, contraband, or otherwise subject to seizure. Horton v. California, 496 U.S.
128, 136-37 (1990).
         Police entry into a home without consent is a search and subject to the
protections of the Fourth Amendment. McNairy v. State, 835 S.W.2d 101, 106 (Tex.
Crim. App. 1991). The constitutional protection against unlawful searches also
extends to the curtilage of the home, and the extent of the curtilage is determined by
factors that bear on whether an individual reasonably may expect that the area in
question should be treated as the home itself. United States v. Dunn, 480 U.S. 294,
300 (1987); Emiliano v. State, 840 S.W.2d 102, 104 (Tex. App.–Corpus Christi
1992, pet. ref’d). We consider the following factors in making this determination: (1)
the proximity of the area to the home; (2) the nature of uses to which the area is put,
(3) whether the area is included in an enclosure surrounding the home; and (4) the
steps the resident took to protect the area from observation of passers-by. Dunn, 480
U.S. at 301; Emiliano, 840 S.W.2d at 104. These factors are useful analytical tools
to the extent that they bear on the central consideration–“whether the area in question
is so intimately tied to the home itself that it should be placed under the home’s
umbrella of Fourth Amendment protection.” Dunn, 480 U.S. at 301.
         Here, based on a diagram drawn by Bowers and admitted into evidence, the
backyard was adjacent to the home and directly behind the home as compared to
Staples. From the diagram and Bowers’ testimony, it does not appear that the
backyard and its contents were readily visible from Staples. The normal and shortest
approach to the home from Staples would have been to the front door of the home. 
The officers had to go past the front door, around the house, and to the back to reach
the yard. We conclude that the officers entered the curtilage of the home when they
entered appellant’s backyard and the intrusion was a search. See Emiliano, 840
S.W.2d at 105 (finding area by garage, which was further removed from street than
home, was part of curtilage of home where officers deviated from public pathway to
approach garage). Thus, we must consider whether the intrusion into appellant’s
backyard, that is, the search, was unlawful under the Fourth Amendment.
         "Probable cause for a search exists where the facts and circumstances within
the knowledge of the officer on the scene and of which he has reasonably trustworthy
information would lead a man of reasonable caution and prudence to believe that he
will find the instrumentality of a crime or evidence pertaining to a crime." Brown v.
State, 481 S.W.2d 106, 110 (Tex. Crim. App. 1972); see McNairy, 835 S.W.2d at
106. An anonymous tip alone is insufficient to establish probable cause to search. 
State v. Steelman, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002); Glass v. State, 681
S.W.2d 599, 601 (Tex. Crim. App. 1984). Probable cause to search based on an
anonymous tip is sufficient when, under the “totality of the circumstances,” the
informant’s basis of knowledge, reliability, and veracity are either known or confirmed
by further investigation. Illinois v. Gates, 462 U.S. 213, 238, 245 (1983); see Glass,
681 S.W.2d at 601 (something more than mere anonymous tip is required before
probable cause is shown to exist). 
         Here, the only information provided to Bowers and Moss was that a suspicious
person with a gun was standing by a red Jeep at a specific address. The information
did not include a description of the suspicious person beyond the gender. Neither
Bowers nor Moss had any information about the basis of knowledge or veracity of the
source of the tip.  Prior to entering appellant’s backyard, the officers had nearly no
corroboration of the information provided in the tip. The officers did not testify they
saw the driver of the Jeep when they arrived at the Daytona address, much less that
they were able to tell whether the driver was male or female. Neither officer saw
anyone with a gun or any other evidence that a crime was being committed at the
Daytona address. The only information from the tip that the officers were able to
corroborate was that a red Jeep was at the Daytona address.
         At the suppression hearing, the State argued that corroboration of the location
of the Jeep coupled with the Jeep’s attempt to evade police were sufficient to
establish probable cause. However, Bowers’ testimony does not support this
argument. Bowers testified, although he observed the Jeep speed up, he never saw
the Jeep commit any traffic violations. Bowers also stated he thought the Jeep might
have been trying to flee but did not feel he was in “hot pursuit” of the Jeep because
he was not close enough to the Jeep. Bowers testified appellant was not charged
with evading. Moss testified he was unable to tell whether the Jeep committed any
traffic violations. Moreover, although appellant’s conduct in running from his house
to the Jeep and back into the house could be considered suspicious, this conduct was
not observed by Bowers until after he entered appellant’s backyard. 
         In sum, at the time Moss and Bowers entered appellant’s backyard, they had no
evidence a crime had been committed and nothing but Bowers’ suspicions that the
driver of the Jeep might have a gun based on a largely uncorroborated anonymous tip. 
See Brinegar v. State, 338 U.S. 160, 175 (1949) (probable cause requires more than
bare suspicion). We cannot say the facts and circumstances within Bowers’ or Moss’s
knowledge and of which they had reasonably trustworthy information would lead a
person of reasonable caution and prudence to believe that he or she would find the gun
or other evidence pertaining to a crime in appellant’s backyard. Although the State
may seize items in “plain view” under certain circumstances,


 the initial intrusion into
appellant’s backyard was not based on probable cause and was unlawful.


 The trial
court erred in denying appellant’s motion to suppress.
C. Harm Analysis
         Error in denying a motion to suppress is subject to harm analysis under rule
44.2(a) of the rules of appellate procedure. Tex. R. App. P. 44.2(a); Hernandez v.
State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Under rule 44.2(a), we must
reverse the judgment of the trial court unless we determine beyond a reasonable doubt
that the error did not contribute to the conviction or punishment. Tex. R. App. P.
44.2(a). 
         Here, the unlawfully seized drugs were the very subject of the case against
appellant. After the trial court denied appellant’s motion to suppress, appellant pled
guilty to the charge and signed a judicial confession. However, the trial court’s ruling
on the motion to suppress undoubtedly contributed at least in part to the State's
leverage in the plea bargaining process and likely contributed to appellant’s decision
to plead guilty in exchange for a favorable punishment recommendation. See McKenna
v. State, 780 S.W.2d 797, 800 (Tex. Crim. App. 1989). We cannot conclude beyond
a reasonable doubt that the error did not contribute to the conviction or punishment. 
Thus, we must reverse the judgment.
IV. CONCLUSION
         The trial court committed reversible error in denying appellant’s motion to
suppress. Accordingly, we reverse the judgment of the trial court and remand the
cause for further proceedings. 
    
          
                                                                                                                   
                                                                        Rogelio Valdez,
                                                                        Chief Justice

 

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed
this 10TH day of November, 2004.