CHAPMAN v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-04-456-CR

         2-04-457-CR

DAMON LAWRENCE CHAPMAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Damon Lawrence Chapman was charged with manufacture of a controlled substance and possession of a controlled substance with intent to deliver.  A jury found him guilty and assessed his punishment at forty years’ imprisonment with a $125,000 fine and twenty years’ imprisonment with a $10,000 fine, respectively.  In two issues, Appellant argues that the trial court erred by 1) allowing the State to introduce extraneous offense evidence during the punishment phase without proper notice to Appellant, and 2) overruling his motion to suppress.  We will reverse and remand. 

Background Facts

On October 16, 2003, at approximately 2:45 a.m. officers from the Wise County Sheriff’s Department arrived at Appellant’s residence for the purpose of serving him with an arrest warrant for aggravated assault.  Two of the four deputies, Officers Lanier and Hightower, proceeded to the rear of the residence to secure the back of the residence.  Lanier testified that while walking towards the back of the residence, he smelled a strong chemical odor, which appeared to be ammonia or ether.  He also stated that there was a barn
(footnote: 2) near the house that he passed while walking to the rear of Appellant’s house.  The door to the barn/shop was open, and Officer Lanier testified that he saw some items that based on his training and experience could be used in a methamphetamine lab. Lanier stated that when he looked into Appellant’s residence he saw a female, later identified as Hollie Dennis, “putting stuff down the sink.”  There was also testimony that the toilet was being flushed.  The outside sewer pipe of Appellant’s house was exposed and raw sewage was running onto the ground instead of into the septic tank.  Police recovered thirteen clear baggies from the raw sewage.  Several baggies had methamphetamine inside of them, while others had been opened and did not contain any drugs. 

Two officers approached the front door of the residence while the other two walked to the back of the residence.  Police knocked on the door of the residence, and when Appellant answered, police arrested him and “brought him out and placed [him] on the porch.”  Afterwards, Lanier went back to the barn area to look through the door “just to verify what [he] had seen.”  The officers then contacted the DPS Narcotics Task Force (DPS), which arrived at the scene around 4:00 a.m. and began their investigation.
(footnote: 3)
 Lanier testified that no attempt was made at any point to secure a search warrant.  Once DPS investigators arrived, they took  photographs of the contents of the barn/shop.  DPS also seized a number of items from the barn/shop.  The items seized from the barn/shop and the thirteen clear baggies containing methamphetamine form the basis of the charges against Appellant.  

In both cause numbers, Appellant filed a motion to suppress, supported by Appellant’s affidavit.  The State did not file any response to the motion to suppress.  The trial court did not hold a hearing on the motion to suppress, and on August 13, 2004, the trial court overruled Appellant’s motion to suppress. 

Motion to Suppress

In issue two, Appellant contends that the trial court erred by overruling his motion to suppress.  We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State, 
10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to the trial court's ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we review de novo a trial court's rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652-53.

In reviewing the suppression determination, we are deferential to the trial court and will reverse only if the decision is unsupported by the record.  
Upton v. State
, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993).  In determining whether a trial court’s decision is supported by the record, we generally consider only the evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996); 
Hardesty v. State
, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984).  However, this general rule is inapplicable where the suppression issue has been consensually re-litigated by the parties during trial on the merits.  
Rachal
, 917 S.W.2d at 809.  Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence and consideration of the relevant trial testimony is appropriate in our review.  
Id.
; 
see also Webb v. State
, 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988), 
cert. denied
, 491 U.S. 910 (1989). 

During the trial on the merits, Appellant’s counsel did not object when the State offered items into evidence that were found on Appellant’s property and included in his earlier motion to suppress.  Furthermore, there was no objection to any additional testimony given by the State’s witness in connection with the search of Appellant’s property.  In fact, trial counsel stated that he had no objection to the photographs of items found in Appellant’s barn/shop and Appellant’s counsel cross-examined the witnesses regarding the search and items found during the search.  Thus, because the issue was re-litigated by the parties during the trial on the merits, we will consider testimony relevant to the motion to suppress from the trial itself in addition to the evidence considered by the trial court when ruling on the motion to suppress. 

In a motion to suppress the fruits of a police search, a defendant has the initial burden of proof.  
Bishop v. State
, 85 S.W.3d 819, 821 (Tex. Crim. App. 2002).  After a defendant shows that a warrantless search occurred, the burden shifts to the State to prove that a warrant existed or an exception to the Fourth Amendment justifies the warrantless search.  
Id
. at 822.  Warrantless searches are presumptively unreasonable under the Fourth Amendment
.  U.S. Const
. amend. IV; 
United States v. Karo
, 468 U.S. 705, 717, 104 S. Ct. 3296, 3304 (1984); 
Kolb v. State
, 532 S.W.2d 87, 89 (Tex. Crim. App. 1976).  To justify a warrantless search, the State must show the existence of probable cause at the time the search was made, and the existence of exigent circumstances, which made the procuring of a warrant impracticable.  
McNairy v. State
, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991); 
Beaver v. State
, 106 S.W.3d 243, 246-47 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  A warrantless search can be justified if it falls within one of the narrow exceptions to the warrant requirement.  
Katz v. United States
, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); 
Best, 
118 S.W.3d at 862. Including the plain view doctrine, 
Walter v. State, 
28 S.W.3d 538, 541 (Tex. Crim. App. 2000); 
State v. Preston
, 925 S.W.2d 142, 144 (Tex. App.—Eastland 1996, no pet), searches in certain exigent circumstances, 
Warden v. Hayden
, 387 U.S. 294, 298-99, 87 S. Ct. 1642, 1645-46 (1967), searches conducted with the consent of the suspect, 
Davis v. United States
, 328 U.S. 582, 593, 66 S. Ct. 1256, 1261 (1946); 
Juarez v. State
, 758 S.W.2d 772, 776 (Tex. Crim. App. 1988), and the automobile exception, 
Carroll v. United States
, 267 U.S. 132, 149, 45 S. Ct. 280, 283-84 (1925); 
Hudson v. State
, 588 S.W.2d 348, 351 (Tex. Crim. App. 1979). 

The State acknowledges that the officers had no search warrant but contends that the items seized from the barn/shop were consistent with the illegal manufacture of narcotics and were in plain view of Officer Lanier. Although the “plain view” doctrine is a well-established exception to the general rule that warrantless searches are per se unreasonable, police officers may seize items in plain view only where (1) the officers have the right to be where they are at the time the item is seen, (2) the officers discover the incriminating evidence inadvertently, and (3) it must be immediately apparent to the officers that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure.  
Horton v. California
, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2308 (1990); 
Ramirez v. State
, 105 S.W.3d 730, 745 (Tex. App.—Austin 2003, no pet.). 

Police entry into a home without consent is a search and is subject to the protections of the Fourth Amendment.  
McNairy
, 835 S.W.2d at 106.  The constitutional protection against unlawful searches also extends to the curtilage of the home, and the extent of the curtilage is determined by factors that bear on whether an individual reasonably may expect that the area in question should be treated as the home itself.  
United States v. Dunn
, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139 (1987); 
Emiliano v. State
, 840 S.W.2d 102, 104 (Tex. App.—Corpus Christi 1992, pet. ref’d).  The following factors are considered in making this determination: (1) the proximity of the area to the home; (2) the nature of uses to which the area is put, (3) whether the area is included in an enclosure surrounding the home; and (4) the steps the resident took to protect the area from observation of passers-by.  
Dunn
, 480 U.S. at 301, 107 S. Ct. at 1139-40; 
Emiliano
, 840 S.W.2d at 104.  These factors are useful analytical tools to the extent that they bear on the central consideration of “whether the area in question is so intimately tied to the home itself that it should be placed under the home’s umbrella of Fourth Amendment protection.”  
Dunn
, 480 U.S. at 301, 107 S. Ct. at 1139-40. 

In the instant case, the barn/shop was located only ten to twelve feet from the house.  There was evidence that the barn/shop was used as a garage to repair vehicles.  Additionally, the barn/shop had a door, which was used to enclose the area.  Based on the description and evidence contained in the record of where the barn/shop was located and its use, we conclude that it was part of the curtilage of the home and therefore entitled to Fourth Amendment protection. 

In the present case, there was no warrant; therefore, the State assumed its burden of proving that the search fell within one of the established exceptions. 
 See Karo, 
468 U.S. at 717, 104 S. Ct. at 3304. 
 
Our review of the record reveals that the only documents the trial court had before it when ruling on Appellant’s motion to suppress were the motion itself and Appellant’s affidavit.  The record does not contain any response by the State to Appellant’s motion to suppress.
(footnote: 4)  Therefore, we conclude that the State did not initially meet its burden of showing that the search fell within an established exception.  However, because the issue was re-litigated at trial, consideration of the relevant trial testimony regarding the motion to suppress is appropriate in our review of whether the trial court abused its discretion in admitting the items seized from Appellant’s property and testimony regarding these items.  
See Rachal
, 917 S.W.2d at 809; 
Hardesty
, 667 S.W.2d at 133. 

Based on the testimony of Officer Lanier, the barn/shop was located about ten to twelve feet from the house.  Officer Lanier stated that as he and Officer Hightower walked to the rear of the residence,
(footnote: 5) he smelled a strong chemical odor, which he believed to be ammonia, ether, or both.  He testified that when he walked by the barn/shop and looked inside the barn/shop, he saw a bucket of dry ice and a five-gallon bucket with a stainless steel bucket floating inside.  After Appellant was arrested, Officer Lanier stated that he “went back through the barn and looked in the door just to verify what [he] had seen.”  Officer Lanier said that he called Captain Walker, who requested that the DPS report to the barn/shop in order to assist them with the investigation of the contents of the barn/shop area.  Officer Lanier testified that the reason they called DPS was “because of the chemicals” and that they were not “equipped or trained to take down a lab site.”

Officers originally arrived at Appellant’s house at 2:45 a.m. to serve him with an arrest warrant.  They knocked on the door and arrested Appellant within just a few minutes, at approximately 2:48 a.m.  There is conflicting evidence in the record as to when DPS arrived at the scene.  Lanier’s testimony was that Sergeant Dowell from DPS arrived around 4:00 a.m., while Appellant’s affidavit states that DPS arrived and began a search of the barn/shop at approximately 5:00 a.m.

Sergeant Dowell testified that when she arrived at the scene, she walked to the doorway of the barn/shop.  She stated that from the doorway she could see a five-gallon plastic container with “diesel” written on top of it.  She took a sample from that container and submitted it to the DPS lab.  She testified that it did not test positive for a controlled substance but did have an ether smell. There were other chemicals present such as starter fluid and Coleman fluid. Sergeant Dowell testified that as she entered the barn/shop, there was a trash bag that contained empty bottles of Red Devil Lye and lithium strips.  There was another plastic bucket containing dry ice “as you walked in the door.”  DPS took photographs of the items contained in the barn/shop, and they seized evidence as a result of the search.  Included in that evidence were two jars that contained liquid.  Each tested positive for methamphetamine and had a combined weight of 160 kilograms. 

The State asserts that the “plain view” doctrine justified the officers’ actions in entering the barn/shop and conducting their investigation without obtaining a search warrant.  The officers were at Appellant’s residence to serve him with an unrelated arrest warrant.  Two officers approached the front door, while two officers walked towards the rear of the residence, which did not have a back door.  Although, the existence of exigent circumstances may sometimes justify a warrantless entry, the record reflects no evidence of any exigent circumstances here that would have permitted officers to search the barn/shop area.  Appellant as well as the other two occupants of the house had already been arrested and the officers had secured the entire area.  There was no testimony that the officers felt threatened or had concern for their safety or for the safety of others.  Furthermore, there was nothing to indicate that entry into the barn/shop area was necessary to prevent the destruction of evidence or contraband, which can be considered an exigent circumstance.  
See McNairy
, 835 S.W.2d at 107.

Additionally, in order for the “plain view” exception to justify a warrantless search, the officer must see an item in plain view at a vantage point where he has a right to be, and the officer must immediately recognize the item to be evidence of a crime, contraband, or otherwise subject to seizure.  
Horton
, 496 U.S. at 136-37, 110 S. Ct. at 2308; 
Martinez v. State
, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000).

Application of the plain view doctrine to the facts of the present case established that the test only justifies some of the evidence seized at Appellant’s residence by officers acting without a warrant.  The record reflects that when the officers arrived at Appellant’s house to serve the arrest warrant, Lanier saw items being washed down the kitchen sink and heard the toilet flushing.  Because the septic pipe was not properly hooked into the ground, the contents that were disposed of were deposited on the ground next to the house.  The baggies that were lying on the ground contained methamphetamine.  We hold that the seizure of these items was proper because they fell within the plain view doctrine. 

However, the search and seizure of items contained in the barn/shop area is more problematic.  Officers were at Appellant’s residence to serve him with an arrest warrant.  They arrived at 2:45 a.m., knocked on the front door, and arrested Appellant at approximately 2:48 a.m.  But before knocking on Appellant’s front door, Officers Lanier and Hightower walked towards the back of the residence where they saw the barn/shop.  The law provides that police have the right to go to the back door of a residence to contact a resident, but only after they have first tried the front door and have received no answer.  
Gonzalez v. State
, 588 S.W.2d 355, 360 (Tex. Crim. App. 1979) (citing 
Long v. State
, 532 S.W.2d 591, 594-95 (Tex. Crim. App. 1976)) (holding that an officer’s attempt in contacting the inhabitants of a house by knocking on the back door after receiving no response at the front door is not a warrantless search); 
State v. Peyrani
, 93 S.W.3d 384, 386-88 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (finding an unconstitutional warrantless search when officers, after months of surveillance at the residence and after finding marijuana in a van leaving the residence, failed to knock at the front door and instead walked around to backyard after hearing voices behind house).  The two officers at the front door knocked, and Appellant came to the door where he was arrested.  Because Appellant answered the door, there was no need to go toward the back of the house in order to serve Appellant with an arrest warrant. 

Furthermore, the plain view doctrine to the warrant requirement allows police officers to seize contraband or evidence that they discover in their legitimate law-enforcement activities.  The exception does not justify warrantless, exploratory searches of closed containers that purport to contain innocuous materials.  
United States v. Villarreal
, 963 F.2d  770, 776 (5th Cir. 1992); 
Ramirez
, 105 S.W.3d at 744.  The plain view doctrine requires that the items in plain view be readily apparent as evidence of a crime or contraband.  
See Horton
, 496 U.S. at 136-37.

The open door to the barn/shop area provided Officer Lanier with a plain view of what he described as some dry ice and a five-gallon bucket with another bucket floating inside.  Officer Lanier testified that he did not have experience or training in the area of the drug manufacturing process.  He even testified that he had to go back to the barn/shop area after Appellant was arrested just to verify what it was he had actually seen.  Officer Lanier also testified that there was a chemical odor in the area.  The presence of dry ice and two containers cannot be said to be illegal.  Also, the smell of ammonia alone, a legal substance, does not constitute contraband.  Without the other items found inside other areas of the barn, specifically the lye and lithium battery strips, which were contained in closed black trash bags, Officer Lanier did not recognize an immediate connection between the items he saw and the illegal manufacturing of methamphetamine, nor would it have been reasonable for him to do so. 

We hold that the warrantless search of the barn/shop area was unlawful.  The plain view doctrine to the warrant requirement is not applicable to the items seized as a result of the warrantless search of Appellant’s barn/shop area.  Officer Lanier deviated from the pathway to the front door of Appellant’s house when serving the arrest warrant and did not have a right to be where he was when he viewed the particular items.  Further, even assuming that Officer Lanier did have a lawful right to be where he was when he made the observation, we cannot say that the items described by Officer Lanier were such as to be immediately apparent as evidence of a crime or contraband.

Harm Analysis
 

Having concluded that the trial court should have granted Appellant’s motion to suppress in part, we are bound to conduct a harm analysis.  
See
 
Tex. R. App. P
. 44.2; 
Hernandez v. State
, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).  The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment must be rule 44.2(a)’s constitutional standard.  
Hernandez
, 60 S.W.3d at 108.  Under rule 44.2(a), we must reverse the judgment of the trial court unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  
See
 
Tex. R. App. P
. 44.2(a).

Here, the unlawfully seized items were the very subject of the cases against Appellant.  Because this was a combined trial, the parties did not segregate evidence of the two offenses.  Although, as previously mentioned, the drugs found in the thirteen baggies were properly seized under the plain view doctrine, the State did rely upon the items seized from the barn/shop area in proving their cases against Appellant.  Because this was the only direct evidence of the crimes charged, a jury would undoubtedly place great weight on this evidence.  The indictment charged Appellant with possession with intent to deliver, as well as manufacture of a controlled substance.  Because evidence regarding drugs and manufacturing equipment were admitted into evidence, the jury could have considered the improperly seized evidence when considering the offense of possession with intent to deliver.  We cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment of Appellant.  We hold the trial court erred by denying Appellant’s motion to suppress with regard to the items seized from the barn/shop.  Thus, we must reverse the judgment.  We sustain Appellant’s second issue.

Extraneous Offenses

In his first issue, Appellant argues that the trial court erred by allowing the State to introduce punishment evidence consisting of extraneous offenses when the State did not provide notice as requested by Appellant pursuant to article 37.07 § 3(g) of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann
. art. 37.07 § 3(g) (Vernon Supp. 2004-05).  Because of our disposition of Appellant’s second issue, we need not address his first issue.  
See
 
Tex. R. App. P
. 47.1 (stating that appellate court need only address every issue necessary for final disposition of appeal).

Conclusion

Because the warrantless search of Appellant’s barn/shop was not justified by any of the established exceptions to the warrant requirement of the United States and Texas Constitutions, such as the “plain view” doctrine or exigent circumstances, the search in this case was unreasonable.  The trial court committed reversible error by denying Appellant’s motion to suppress with regard to items seized from his barn/shop.  Accordingly, we reverse the judgments of the trial court and remand the cases for a new trial.

PER CURIAM

PANEL B:  HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 18, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The testimony of Officer Lanier described the separate building next to the house as a barn.  Appellant asserts that there is no barn on the premises and that the building in question is a shop which is used for the repair of vehicles and contains tools, oil, chemicals, and cleaners.

3:
In his affidavit, Appellant stated that DPS arrived and began their investigation at approximately 5:00 a.m. 

4:
Additionally, the trial court clerk has confirmed that no response by the State is contained in the trial court’s record.

5:
The record reveals that the residence was a trailer and did not have a back door.