

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00301-CR

THE STATE OF TEXAS, APPELLANT

V.

STEVEN MALONE, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 23,868-B, Honorable John B. Board, Presiding

March 9, 2015

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, the State of Texas, appeals the trial court's order granting appellee Steven Malone's motion to suppress evidence. On appeal, the State contends that appellee lacked standing to challenge the search leading to the seizure of a firearm, drugs, and drug paraphernalia following appellee's arrest on unrelated warrants. We will affirm.

Factual and Procedural History

In the early morning hours of October 12, 2012, Amarillo Police Department officers Reese Lovato and Dusty Johnson were patrolling and looking for appellee to arrest him on three outstanding traffic warrants. The officers drove by the house where they knew appellee's parents to reside and happened to see appellee outside standing in the driveway near the tailgate of a pickup and nearby two other vehicles, all three of which were parked in the driveway very near the home and alongside a wooden privacy fence that extended from the house to the sidewalk that abuts the residential road on which the house is located.[1] Officer Johnson knew appellee by sight, and the officers stopped, confirmed appellee's identity as they approached him, directed appellee to place his hands behind him, placed appellee in handcuffs, and took him to their patrol car; so, within seconds of spotting appellee, the officers had arrested him. Officers learned from appellee that he was in the process of moving from an apartment into his parent's house.

With appellee in custody in the patrol car, the officers then returned to the driveway and proceeded to search the area surrounding the spot where officers first saw appellee. They found and opened a black case—referred to at the hearing as "the dope bag"—in the bed of the pickup by which appellee was standing. On a nearby black Toyota, the vehicle Officer Johnson knew appellee to drive on a regular basis, officers found two more items. One of the items was a white bag, referred to at the

---

[1] Photographic evidence suggests that appellee and the pickup were located entirely on the driveway; the two other vehicles were parked partly on the driveway and partly on a grassy area between the boundary of the concrete driveway and the privacy fence such that the cars were positioned very near the fence. The arrangement of the vehicles was such that the pickup and one of the cars appear to be within inches of the home's exterior, and the cluster of vehicles were within yards of the front porch.

hearing as "the light bag." The officers opened and searched the white bag. The second item was another case, which the officers also searched and discovered that it contained a gun. The officers seized these items.

Appellee filed a motion to suppress the evidence claiming, *inter alia*, that the officers were not justified in engaging in this warrantless search of the area in these circumstances. The State urged several exceptions to the warrant requirement and also maintained that appellee lacked standing to challenge the search at any rate. The trial court granted appellee's motion to suppress, concluding that no exception to the Fourth Amendment's warrant requirement would apply to the instant circumstances such that the warrantless search was justified and impliedly concluding that appellee did have standing to challenge the search by which the evidence was seized.

On appeal, the State has apparently abandoned its arguments relating to the justification for the warrantless search and, instead, has focused solely on appellee's standing to challenge the search. The State argues that appellee had no legitimate expectation of privacy in the area searched and, therefore, has no standing to move the trial court to suppress the evidence seized. We will examine the record to determine whether appellee had standing to challenge the search.

Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review the

trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts *de novo*. *Turrubiate*, 399 S.W.3d at 150.

In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006). Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *See State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). We afford the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). All purely legal questions are reviewed *de novo*. *Johnston*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). If the trial court's ruling is correct under any theory of law applicable to the case, we will sustain the ruling. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc).

4

The Fourth Amendment of the U.S. Constitution and Article I, Section 9, of the Texas Constitution protect individuals from unreasonable searches and seizures. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013); *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993) (en banc). The rights secured by the Fourth Amendment and Article I, Section 9, are personal; accordingly, an accused has standing to challenge the admission of evidence obtained by an "unlawful" search or seizure only if he had a legitimate expectation of privacy in the place invaded. *See Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)); *Betts*, 397 S.W.3d at 203 (also citing *Rakas*). The defendant who challenges a search has the burden of proving facts demonstrating a legitimate expectation of privacy. *Betts*, 397 S.W.3d at 203. He must show that he had a subjective expectation of privacy in the place invaded and that society is prepared to recognize that expectation of privacy as objectively reasonable. *Id.* (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979)).

In considering whether a defendant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is

consistent with historical notions of privacy. *Id.* at 203–04; *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). This is a non-exhaustive list of factors, and no one factor is dispositive. *See Granados*, 85 S.W.3d at 223. Again, "[a]lthough we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo*." *See Betts*, 397 S.W.3d at 204 (quoting *Kothe*, 152 S.W.3d at 59).

More specifically, it is well settled that the Fourth Amendment provides significant protection to homes and the areas immediately attached to and surrounding them. *Rodriguez v. State*, 106 S.W.3d 224, 228 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *United States v. Tarazon-Silva*, 960 F. Supp. 1152, 1162 (W.D. Tex. 1997), *aff'd*, 166 F.3d 341 (5th Cir. 1998)). "[T]he land immediately surrounding and associated with the home" is the "curtilage," and the curtilage "warrants the [same] Fourth Amendment protections that attach to the home." *Matthews v. State*, 165 S.W.3d 104, 112 (Tex. App.—Fort Worth 2005, no pet.) (quoting with alteration *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984)); *see Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex. Crim. App. [Panel Op.] 1979) (recognizing constitutional protection of curtilage by holding that "the private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself"). Whether a particular area is included within the curtilage of a home is determined by whether the defendant had a reasonable expectation of privacy in the area. *Matthews*, 165 S.W.3d at 112.

When tasked with defining the extent of a home's curtilage, courts generally resolve these extent-of-curtilage questions by particular reference to four factors: the

6

proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987). However, "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *See id.*

The Texas Court of Criminal Appeals looked at standing in a similar context in *Betts*, when it was asked to determine whether appellee had standing to contest the search of his aunt's backyard. *See Betts*, 397 S.W.3d at 203–05. In *Betts*, the court recognized that appellee did not have an ownership interest in the property at issue— though he had previously lived at the residence, owned by his aunt. *See id.* at 204. The court noted, however, that appellee did have his aunt's permission to keep his dogs in the backyard and to enter the premises to care for the dogs, which he did daily. *See id.* The *Betts* court also noted that the backyard was fenced in on three sides by wire fencing and the fourth side was enclosed by a neighbor's wooden privacy fence. *See id.* The court identified the location searched as "curtilage of the house." *See id.* at 205 n.4. Based upon the totality of the circumstances and viewing the evidence in the appropriate light, the court concluded that the record in *Betts* supported the conclusion that appellee had a reasonable expectation of privacy in his aunt's backyard. *See id.* at 204.

Analysis

At the outset, we note that appellee did have a possessory interest in the residence, having explained to officers that he was in the process of moving into the home with his parents and son.  And the record suggests that he was legitimately at the residence in furtherance of that process.  *See id.* at 203–04.  These considerations lend themselves to the conclusion that appellee had a reasonable expectation of privacy in the area searched.  Looking more specifically to determine whether that area fell within the curtilage of the home and, thus, enjoyed the special Fourth Amendment protection granted to the home, we look at the *Dunn* factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.  *See Dunn*, 480 U.S. at 301.

Photographs introduced into evidence show the area and reveal that appellee's location was very near the home—the seized case being visible in the anterior portion of the bed of the pickup at a location likely no more than ten feet away from an exterior window of the house—and was obscured at least partially by the nearby privacy fence.  *See id.*  The fence, driveway, and home were situated in such a way as to create a partial enclosure in which the vehicles were nestled.  *See id.*  Indeed, Officer Lovato explained that the officers could not see appellee or the driveway from the direction in which the officers were traveling until they passed the privacy fence and were positioned in such a way as to be nearly in front of the house, until they were "right on it."  *See Pool v. State*, 157 S.W.3d 36, 41–42 (Tex. App.—Waco 2004, no pet.) (mem.

op.) (in concluding that unfenced backyard was curtilage of mobile home, noting, *inter alia*, that "a six-foot-high partial fence extended approximately sixteen feet horizontally from the house"); *see also Emiliano v. State*, 840 S.W.2d 102, 105 (Tex. App.—Corpus Christi 1992, pet. ref'd) (concluding that "officers violated appellant's protected Fourth Amendment privacy interests by intruding upon the curtilage to enter the position from which they could view [the item seized]" when officers walked around back of the house and into the driveway, then looked in an open garage, detached from but near the house).[2]

Officers learned from their conversation with appellee at the scene that he was in the process of moving into his parents' house. Certainly, parking vehicles used in the moving process to load and unload personal belongings is a common use for a residential driveway. Further, it would appear that residents of the home added or utilized the partial wooden fence for an added measure of privacy and parked the vehicles very near the home and in such a fashion as to fit two vehicles within mere feet of the exterior of the home. These steps could be understood as measures taken by the residents to protect the area from observation by people passing by. *See Dunn*, 480 U.S. at 301.

---

[2] The *Emiliano* court was also careful to note that the normal approach to appellant's front door would not include driving to a point behind the house from which the contents of the garage would be visible. See *Emiliano*, 840 S.W.2d at 105. "We cannot construe the officers' actions as normal approach or retreat from appellant's residence." *Id.* Here, we acknowledge that a person's expectation of privacy in the curtilage of a home is not absolute; the public, including police, may enter sidewalks, pathways, common entrances, and similar passageways in order to approach and knock upon a home's front door. *See Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App. 1989) (en banc), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (en banc). To the extent that this issue is relevant here, we note that the record does not suggest that the officers re-entered the area in question to approach or knock on the front door or to accomplish any task other than a search of the area and the items found in the area in which appellee was standing.

Again, analyzing only whether appellee had a privacy interest in the location searched, we conclude that the state of the record is such that the trial court could have concluded that he did. With that, the trial court properly concluded that appellee had standing to contest the search. We overrule the State's sole contention on appeal.

Conclusion

Having overruled the State's sole point of error, we affirm the trial court's order granting appellee's motion to suppress. *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Do not publish.