PD-0443-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/21/2015 3:45:44 PM
Accepted 4/22/2015 10:42:07 AM
ABEL ACOSTA
CLERK

PD-0443-15

*IN THE COURT OF CRIMINAL APPEALS*
*OF TEXAS AT AUSTIN*

*NO. _____*

*THE STATE OF TEXAS,*
                    *Appellant*
        *VS.*

*STEVEN MALONE,*
                    *Appellee*

************
*Appealed from the Court of Appeals*
*for the*
*Seventh Judicial District at Amarillo*

************

*NO. 07-14-00301-CR*
_____

*STATE'S PETITION FOR DISCRETIONARY REVIEW*
_____

*JAMES A. FARREN*
*Criminal District Attorney*
*Randall County, Texas*

*BY:*   *WARREN L. CLARK*
       *Appellate Chief*
       *Assistant Criminal D.A.*
       *SBN 04300500*
       *Randall County Justice Center*
       *2309 Russell Long Blvd., Ste. 120*
       *Canyon, Texas 79015*
       *806/468-5591*
       *806/468-5566 (fax)*
       *ATTORNEY FOR STATE*

## *NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT*

- The parties to the trial court's judgment are the State of Texas and Appellee, Steven Malone.

- The trial court judge was the Honorable John Board, presiding judge of the 181st District Court, Randall County, Texas.

- Trial counsel for the State was Lacy Miller, Assistant Criminal District Attorney, Randall County Criminal District Attorney's Office, Randall County Justice Center, 2309 Russell Long Blvd., Ste. 120, Canyon, Texas 79015.

- Appellate counsel for the State on direct appeal was Warren L. Clark, Assistant Criminal District Attorney, Randall County Criminal District Attorney's Office, Randall County Justice Center, 2309 Russell Long Blvd., Ste. 120, Canyon, Texas 79015.

- Appellate counsel for the State before this Court is Warren L. Clark, Randall County Criminal District Attorney.

- Counsel for Appellee at trial was Troy Bollinger, 600 Ash Street, Plainview, Texas 79072.

- Counsel for Appellant before the court of appeals was Troy Bollinger, Attorney at Law.

## *TABLE OF CONTENTS*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUND FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        IF A TRIAL COURT BASES AN ORDER OF SUPPRESSION OF EVIDENCE ON A "THEORY OF RELEVANCE" WHICH IS INDEPENDENT OF ANY FOURTH AMENDMENT ANALYSIS, MAY AN APPEALS COURT NEVERTHELESS AFFIRM THIS RULING AS CORRECT UNDER ANY THEORY OF LAW APPLICABLE TO THE CASE, EVEN IF THE TRIAL COURT'S ORDER OF SUPPRESSION NECESSARILY EXCLUDES FROM CONSIDERATION THE ISSUE OF STANDING AS A MATTER OF LAW?

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      Opinion of the Court of Appeals

# *INDEX OF AUTHORITIES*

## *Cases*

*Armendariz v. State*, 123 S.W.3d 401
(Tex.Crim.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Romero v. State*, 800 S.W.2d 539
(Tex.Crim.App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State v. Allen*, 53 S.W.3d 731
(Tex.App.-Houston [1st Dist.] 2001, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 8

*State v. Gonzales*, 850 S.W.2d 672
(Tex.App.-San Antonio 1993, pet. ref'd.) . . . . . . . . . . . . . . . . . . . . . . . 4,6,7

*State v. Klima*, 934 S.W.2d 109
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State v. Ross*, 32 S.W.3d 853
(Tex.Crim.App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## *Rules, Statutes*

Tex. Rules App. Proc. 66.3(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

No. 07-14-00301-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS,                                                              Appellant

V.

STEVEN MALONE,                                                                  Appellee

* * * * *

*STATE'S PETITION FOR DISCRETIONARY REVIEW*

* * * * *

TO THE HONORABLE COURT OF APPEALS:

Comes now, the State of Texas, by and through the duly elected Criminal District Attorney of Randall County, Texas and respectfully urges this Court to grant discretionary review of the above-named cause, pursuant to the rules of appellate procedure.

## *STATEMENT REGARDING ORAL ARGUMENT*

The State requests oral argument because consideration and argument on this unique set of facts will clarify the level of deference attributable to trial court rulings, to the considerable benefit of the bench and appellate bar.

1

## STATEMENT OF THE CASE

Appellee was charged in a two-count indictment for the felony offense of Possession of a Controlled Substance with Intent to Deliver (DFZ) and Possession of a Firearm by a Felon. He filed a motion to suppress which was heard and granted by the trial court by written order. The State appealed this ruling. Subsequent to briefing and oral argument, the court of appeals affirmed the order of suppression, holding that the trial court, when "analyzing only whether appellee had a privacy interest in the location searched . . .could have concluded that he did." (slip op. at p. 10)

## PROCEDURAL HISTORY

On March 9, 2015, the court of appeals affirmed the trial court's suppression order in an unpublished opinion. (See Appendix - court of appeal's slip opinion). The State filed its motion for rehearing on March 19, 2015 which was overruled on March 31, 2015. The State's petition is due on April 30, 2015.

## GROUND OF REVIEW

IF A TRIAL COURT BASES AN ORDER OF SUPPRESSION OF EVIDENCE ON A "THEORY OF RELEVANCE" WHICH IS INDEPENDENT OF ANY FOURTH AMENDMENT ANALYSIS, MAY AN APPEALS COURT NEVERTHELESS AFFIRM THIS RULING AS CORRECT UNDER ANY THEORY OF LAW APPLICABLE TO THE CASE, EVEN IF THE TRIAL COURT'S ORDER OF SUPPRESSION NECESSARILY EXCLUDES FROM CONSIDERATION THE ISSUE OF STANDING AS A MATTER OF LAW?

## ARGUMENT AND AUTHORITIES

Appellee initially based his request for suppression on traditional Fourth Amendment principles. His suppression motion urged the absence of any exception to the warrantless requirement as well as corresponding absence of any exigent circumstances to justify the warrantless seizure of evidence by law enforcement. (C.R. 22-24) However, at the evidentiary hearing, Appellee staked out a position diametrically opposed to the legal theories espoused within his motion. He specifically invoked a theory not contained in his written motion, successfully arguing that the lack of "affirmative links" (which otherwise might have placed Appellee in "legal possession" of the items seized) rendered this evidence "not relevant to the case against this [Appellee] before this Court." (C.R. 243) Accordingly, the trial court concluded, as a matter of law, that there was no evidence to establish that any of the items seized were ever in the care, custody or control of

3

Appellee or that he even lived at the location searched. (C.R. 240, 243) The trial court likewise concluded, as a matter of law, that the evidence seized was "not relevant" and therefore, not admissible and subject to suppression. (C.R. 244)

The appeals court's observation that the trial court "could have concluded" that Appellee had established his standing to complain of the search, when the trial court based its explicit suppression order on a theory separate and distinct from Fourth Amendment jurisprudence, was and is not supported by the record or by controlling law. In other words, standing could not have had any relevance or applicability to the *sole* basis of the trial court's suppression order. As a result, the appeals court's utilization of the established appellate construct which permits sustension of a trial court's ruling on "any theory of law applicable to the case" was clearly erroneous and constituted an improper application of law. *State v. Gonzales*, 850 S.W.2d 672, 675 (Tex.App.-San Antonio 1993, pet. ref'd.).

Given the conflict between the Amarillo appeals court's opinion and the reasoning underlying the *Gonzales* decision on an identical issue *and* the question of just how much deference should be extended to a trial court's determination on Fourth Amendment issues under the unique events which transpired in the trial court, this Court should grant discretionary review. Tex. R. App. P. 66.3(a) & (f).

Facts

The trial court conducted a hearing on Appellee's suppression motion at which time it heard the testimony of two police officers who were involved in the search and seizure of evidence made the subject of the indictment. It also received photographic evidence and entertained argument of counsel. Appellee's theory of suppression, as articulated in his written pleadings, was two-fold: first, the police failed to secure search warrants for seizure of the items in question and two, there was no evidence to establish Appellee's possession, control or dominion over the premises searched or the items seized. As Appellee saw it, the absence of any "affirmative links" rendered the evidence seized as "irrelevant" and subject to suppression.

This theory that the paucity of "affirmative links" rendered evidence seized as "irrelevant" and therefore amenable to suppression was Appellee's dominant theme throughout his interrogation of the police officers during the suppression hearing. Indeed, his argument before the trial court focused exclusively on the insufficiency of these "affirmative links," emphasizing that neither officer could attest that Appellee ever possessed, claimed ownership or exercised any degree of control over the items or place searched. He orally stipulated that he did not exercise dominion or control over the premises, vehicles or items in question. (R.R. 1:110,113-14, 124-25)

In contrast, the State argued, *inter alia*, that Appellee had failed to prove his standing to contest the search of the premises or ownership in the items seized, thereby forfeiting any claim to standing. (R.R. 1:114-15) Insofar as his "affirmative links" theory was concerned, the prosecutor reminded the trial court that Appellee's argument went to the issue of factual sufficiency of the evidence and thus, was not a proper inquiry at the suppression hearing. Rather, this argument was best reserved for trial on the merits. (R.R. 1:119)

Appellee's proposed findings and conclusions were ultimately adopted word-for-word by the trial court in its formal Findings and Conclusions. They embraced Appellee's unconventional theory of "affirmative links" and provide the sole basis for suppression of evidence. (C.R. 241-244)

<u>Argument</u>

A reviewing court limits its analysis to the question of whether the trial court properly applied the law to the facts established on the record. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990) Further, it is clear that a decision of the trial court will be upheld if that decision can be based on any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003) Nevertheless, the theory of law used to uphold the trial court's decision must find support within the pleadings filed in the cause and the specific findings made by the

6

trial court. The "law applicable to the case" appellate construct does not permit consideration of legal theories never argued in support of the findings actually entered in the case. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000); *State v. Gonzales*, 850 S.W.2d at 675.

Here, Appellee's written pleadings outlined his theory of suppression: *one*, no exception to the warrant requirement existed and *two*, no evidence of exigent circumstances that could have excused the warrant requirement. Thus, Appellee had the burden of establishing all of the elements of his Fourth Amendment claim, including his own privacy interest in the premises searched and the items seized. *State v. Klima*, 934 S.W.2d 109, 110 (Tex.Crim.App. 1996) But those theories were abandoned at the suppression hearing with Appellee's promotion of his novel "relevance theory." Indeed, Appellee went so far as to suggest (wrongly) that the issue of standing, if it applied at all, devolved upon the State as its particular burden and not the defense. (R.R. 1:124-25)

It is worth pointing out that the suppression order, augmented by the trial court's Findings and Conclusions, was based *solely* on Appellee's novel theory of evidentiary relevance since there is nothing in the record indicating that the trial court suppressed the evidence upon consideration of Fourth Amendment principles. In other words, standing could not have had any relevance or applicability to the *sole*

basis of the trial court's suppression order. Thus, it was illogical for the appeals court to have concluded that the trial court implicitly found that Appellee had standing to complain of the search since this conclusion was antithetical to Appellee's stated theory of suppression. Simply put, an appeals court's use of "law applicable to the case" cannot be properly applied when to do so necessarily employs a legal theory never raised and litigated in the trial court at the contested hearing. *Gonzales,* 850 S.W.2d at 675.

Serious questions of fairness arise when a party prevails at the trial court level on one ground but switches it on appeal to avail itself of the "law applicable to the case" doctrine. *See State v. Allen*, 53 S.W.3d 731, 734 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (prevailing defendant not permitted to raise standing for first time on appeal and invoke "law applicable to the case" doctrine to uphold suppression order). Therefore, the appeals court's adoption of the trial court's flawed theory of exclusion, facilitated through its application of the "law applicable to the case" doctrine, constitutes an abuse of that doctrine that conflicts with other appeals courts which have dealt with the same or substantially similar issue. This calls for an exercise of this Court's power of supervision over a lower court.

### ***PRAYER FOR RELIEF***

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals

8

grant this Petition for Discretionary Review and upon further briefing and oral argument, reverse the decision of the Court of Appeals.

Respectfully submitted,

JAMES A. FARREN
Randall County Criminal D.A.

WARREN L. CLARK
APPELLATE CHIEF
wclark@randallcounty.org
clarkwl3@gmail.com
Assistant Criminal D. A.
Randall County Crim. D.A.'s Office
Randall County Justice Center
2309 Russell Long Blvd., Ste. 120
Canyon, Texas 79015
806/468-5591
806/468-5566 (fax)

s/ Warren L. Clark
Warren L. Clark
SBN 04300500

## *CERTIFICATE OF COMPLIANCE*

The undersigned certifies that the word count to this document in WordPerfect format contains 2,185 words.

s/ Warren L. Clark
Warren L. Clark

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing Petition For Discretionary Review was mailed to the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711 and to Troy Bollinger, Attorney at Law, 600 Ash Street, Plainview, Texas 79072 on this the 20th day of April, 2015.

s/ Warren L. Clark
Warren L. Clark

10

# *APPENDIX*



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00301-CR

THE STATE OF TEXAS, APPELLANT

V.

STEVEN MALONE, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 23,868-B, Honorable John B. Board, Presiding

March 9, 2015

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, the State of Texas, appeals the trial court's order granting appellee Steven Malone's motion to suppress evidence. On appeal, the State contends that appellee lacked standing to challenge the search leading to the seizure of a firearm, drugs, and drug paraphernalia following appellee's arrest on unrelated warrants. We will affirm.

Factual and Procedural History

In the early morning hours of October 12, 2012, Amarillo Police Department officers Reese Lovato and Dusty Johnson were patrolling and looking for appellee to arrest him on three outstanding traffic warrants. The officers drove by the house where they knew appellee's parents to reside and happened to see appellee outside standing in the driveway near the tailgate of a pickup and nearby two other vehicles, all three of which were parked in the driveway very near the home and alongside a wooden privacy fence that extended from the house to the sidewalk that abuts the residential road on which the house is located.[1] Officer Johnson knew appellee by sight, and the officers stopped, confirmed appellee's identity as they approached him, directed appellee to place his hands behind him, placed appellee in handcuffs, and took him to their patrol car; so, within seconds of spotting appellee, the officers had arrested him. Officers learned from appellee that he was in the process of moving from an apartment into his parent's house.

With appellee in custody in the patrol car, the officers then returned to the driveway and proceeded to search the area surrounding the spot where officers first saw appellee. They found and opened a black case—referred to at the hearing as "the dope bag"—in the bed of the pickup by which appellee was standing. On a nearby black Toyota, the vehicle Officer Johnson knew appellee to drive on a regular basis, officers found two more items. One of the items was a white bag, referred to at the

---

[1] Photographic evidence suggests that appellee and the pickup were located entirely on the driveway; the two other vehicles were parked partly on the driveway and partly on a grassy area between the boundary of the concrete driveway and the privacy fence such that the cars were positioned very near the fence. The arrangement of the vehicles was such that the pickup and one of the cars appear to be within inches of the home's exterior, and the cluster of vehicles were within yards of the front porch.

hearing as "the light bag." The officers opened and searched the white bag. The second item was another case, which the officers also searched and discovered that it contained a gun. The officers seized these items.

Appellee filed a motion to suppress the evidence claiming, *inter alia*, that the officers were not justified in engaging in this warrantless search of the area in these circumstances. The State urged several exceptions to the warrant requirement and also maintained that appellee lacked standing to challenge the search at any rate. The trial court granted appellee's motion to suppress, concluding that no exception to the Fourth Amendment's warrant requirement would apply to the instant circumstances such that the warrantless search was justified and impliedly concluding that appellee did have standing to challenge the search by which the evidence was seized.

On appeal, the State has apparently abandoned its arguments relating to the justification for the warrantless search and, instead, has focused solely on appellee's standing to challenge the search. The State argues that appellee had no legitimate expectation of privacy in the area searched and, therefore, has no standing to move the trial court to suppress the evidence seized. We will examine the record to determine whether appellee had standing to challenge the search.

Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review the

3

trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts *de novo*. *Turrubiate*, 399 S.W.3d at 150.

In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006). Unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *See State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). We afford the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). All purely legal questions are reviewed *de novo*. *Johnston*, 336 S.W.3d at 657; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). If the trial court's ruling is correct under any theory of law applicable to the case, we will sustain the ruling. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc).

4

Applicable Law

The Fourth Amendment of the U.S. Constitution and Article I, Section 9, of the Texas Constitution protect individuals from unreasonable searches and seizures. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013); *Richardson v. State*, 865 S.W.2d 944, 948 (Tex. Crim. App. 1993) (en banc). The rights secured by the Fourth Amendment and Article I, Section 9, are personal; accordingly, an accused has standing to challenge the admission of evidence obtained by an "unlawful" search or seizure only if he had a legitimate expectation of privacy in the place invaded. *See Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)); *Betts*, 397 S.W.3d at 203 (also citing *Rakas*). The defendant who challenges a search has the burden of proving facts demonstrating a legitimate expectation of privacy. *Betts*, 397 S.W.3d at 203. He must show that he had a subjective expectation of privacy in the place invaded and that society is prepared to recognize that expectation of privacy as objectively reasonable. *Id.* (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979)).

In considering whether a defendant has demonstrated an objectively reasonable expectation of privacy, we examine the totality of the circumstances surrounding the search, including (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is

5

consistent with historical notions of privacy. *Id.* at 203–04; *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002). This is a non-exhaustive list of factors, and no one factor is dispositive. *See Granados*, 85 S.W.3d at 223. Again, "[a]lthough we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing *de novo*." *See Betts*, 397 S.W.3d at 204 (quoting *Kothe*, 152 S.W.3d at 59).

More specifically, it is well settled that the Fourth Amendment provides significant protection to homes and the areas immediately attached to and surrounding them. *Rodriguez v. State*, 106 S.W.3d 224, 228 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *United States v. Tarazon-Silva*, 960 F. Supp. 1152, 1162 (W.D. Tex. 1997), *aff'd*, 166 F.3d 341 (5th Cir. 1998)). "[T]he land immediately surrounding and associated with the home" is the "curtilage," and the curtilage "warrants the [same] Fourth Amendment protections that attach to the home." *Matthews v. State*, 165 S.W.3d 104, 112 (Tex. App.—Fort Worth 2005, no pet.) (quoting with alteration *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984)); *see Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex. Crim. App. [Panel Op.] 1979) (recognizing constitutional protection of curtilage by holding that "the private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself"). Whether a particular area is included within the curtilage of a home is determined by whether the defendant had a reasonable expectation of privacy in the area. *Matthews*, 165 S.W.3d at 112.

When tasked with defining the extent of a home's curtilage, courts generally resolve these extent-of-curtilage questions by particular reference to four factors: the

proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987). However, "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *See id.*

The Texas Court of Criminal Appeals looked at standing in a similar context in *Betts*, when it was asked to determine whether appellee had standing to contest the search of his aunt's backyard. *See Betts*, 397 S.W.3d at 203–05. In *Betts*, the court recognized that appellee did not have an ownership interest in the property at issue—though he had previously lived at the residence, owned by his aunt. *See id.* at 204. The court noted, however, that appellee did have his aunt's permission to keep his dogs in the backyard and to enter the premises to care for the dogs, which he did daily. *See id.* The *Betts* court also noted that the backyard was fenced in on three sides by wire fencing and the fourth side was enclosed by a neighbor's wooden privacy fence. *See id.* The court identified the location searched as "curtilage of the house." *See id.* at 205 n.4. Based upon the totality of the circumstances and viewing the evidence in the appropriate light, the court concluded that the record in *Betts* supported the conclusion that appellee had a reasonable expectation of privacy in his aunt's backyard. *See id.* at 204.

Analysis

At the outset, we note that appellee did have a possessory interest in the residence, having explained to officers that he was in the process of moving into the home with his parents and son. And the record suggests that he was legitimately at the residence in furtherance of that process. *See id.* at 203–04. These considerations lend themselves to the conclusion that appellee had a reasonable expectation of privacy in the area searched. Looking more specifically to determine whether that area fell within the curtilage of the home and, thus, enjoyed the special Fourth Amendment protection granted to the home, we look at the *Dunn* factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *See Dunn*, 480 U.S. at 301.

Photographs introduced into evidence show the area and reveal that appellee's location was very near the home—the seized case being visible in the anterior portion of the bed of the pickup at a location likely no more than ten feet away from an exterior window of the house—and was obscured at least partially by the nearby privacy fence. *See id.* The fence, driveway, and home were situated in such a way as to create a partial enclosure in which the vehicles were nestled. *See id.* Indeed, Officer Lovato explained that the officers could not see appellee or the driveway from the direction in which the officers were traveling until they passed the privacy fence and were positioned in such a way as to be nearly in front of the house, until they were "right on it." *See Pool v. State*, 157 S.W.3d 36, 41–42 (Tex. App.—Waco 2004, no pet.) (mem.

op.) (in concluding that unfenced backyard was curtilage of mobile home, noting, *inter alia*, that "a six-foot-high partial fence extended approximately sixteen feet horizontally from the house"); *see also Emiliano v. State*, 840 S.W.2d 102, 105 (Tex. App.—Corpus Christi 1992, pet. ref'd) (concluding that "officers violated appellant's protected Fourth Amendment privacy interests by intruding upon the curtilage to enter the position from which they could view [the item seized]" when officers walked around back of the house and into the driveway, then looked in an open garage, detached from but near the house).[2]

Officers learned from their conversation with appellee at the scene that he was in the process of moving into his parents' house. Certainly, parking vehicles used in the moving process to load and unload personal belongings is a common use for a residential driveway. Further, it would appear that residents of the home added or utilized the partial wooden fence for an added measure of privacy and parked the vehicles very near the home and in such a fashion as to fit two vehicles within mere feet of the exterior of the home. These steps could be understood as measures taken by the residents to protect the area from observation by people passing by. *See Dunn*, 480 U.S. at 301.

---

[2] The *Emiliano* court was also careful to note that the normal approach to appellant's front door would not include driving to a point behind the house from which the contents of the garage would be visible. See *Emiliano*, 840 S.W.2d at 105. "We cannot construe the officers' actions as normal approach or retreat from appellant's residence." *Id.* Here, we acknowledge that a person's expectation of privacy in the curtilage of a home is not absolute; the public, including police, may enter sidewalks, pathways, common entrances, and similar passageways in order to approach and knock upon a home's front door. *See Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim. App. 1989) (en banc), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (en banc). To the extent that this issue is relevant here, we note that the record does not suggest that the officers re-entered the area in question to approach or knock on the front door or to accomplish any task other than a search of the area and the items found in the area in which appellee was standing.

Again, analyzing only whether appellee had a privacy interest in the location searched, we conclude that the state of the record is such that the trial court could have concluded that he did. With that, the trial court properly concluded that appellee had standing to contest the search. We overrule the State's sole contention on appeal.

Conclusion

Having overruled the State's sole point of error, we affirm the trial court's order granting appellee's motion to suppress. *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Do not publish.